COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia

PUBLISHED

HARRY LEE DAVISON, III

                                        OPINION BY
v.       Record No. 0633-17-2         JUDGE JEAN HARRISON CLEMENTS
                                        OCTOBER 23, 2018

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

David B. Hargett (Hargett Law, PLC, on brief), for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

A jury found appellant guilty of forcible sodomy in violation of Code § 18.2-67.1 and

aggravated sexual battery in violation of Code § 18.2-67.3.[1] The sole issue in this appeal is

whether the trial court erred in giving jury instructions for forcible sodomy and aggravated

sexual battery that combined the alternative theories of force, mental incapacity, or physical

helplessness as the means by which the sexual acts were committed against the victim's will.[2]

Appellant contends that the instructions were confusing and could have resulted in a

non-unanimous verdict. We find that the trial court did not err in giving the instructions.

---

[1] The jury also found appellant guilty of two counts of object sexual penetration in
violation of Code § 18.2-67.2 and two counts of wounding another person in the commission of a
felony in violation of Code § 18.2-53. Those convictions are not the subject of this appeal. The
jury found appellant not guilty of two other counts of wounding another person in the
commission of a felony.

[2] This Court did not grant appellant's assignment of error challenging the sufficiency of
the evidence to sustain his convictions.

## BACKGROUND

The evidence established that on October 2, 2015, the victim and a female friend went to a bar in Fredericksburg about 11:30 p.m. The victim had been drinking wine at the friend's house and had a vodka drink at the bar. Appellant was at the bar with a male friend. Appellant and the victim had not met previously. They talked at the bar, and the victim ordered another drink. About 1:30 a.m. on October 3, the victim voluntarily left the bar with appellant, and they drove away in his truck. The victim appeared unsteady on her feet but was not "fall-down drunk." The victim's friend was concerned that the victim had left with a stranger and tried to phone her. About 2:00 a.m., appellant and the victim returned to the bar's parking lot. The victim was naked from the waist down and her legs were bloody. As soon as the victim was out of the truck, appellant and his friend sped off and went to a car wash where they cleaned the truck. Then they went to a friend's house in Spotsylvania County, where police later apprehended appellant.

The victim was unable to tell her friend what had happened and kept repeating that she wanted to leave. The victim initially did not want to involve the police because she was in the midst of an acrimonious divorce and her estranged husband was an FBI agent. The friend called 911 because she was concerned that the victim did not look well. The EMT who responded to the scene noted that the victim was alert and "oriented" to time and place. The victim was examined at a local hospital at 3:25 a.m. by a trained sexual assault nurse, who observed that the victim's vagina was swollen and had clotted blood, but she saw no injuries to the victim's anus. The victim also had bruises on her body and was in shock from having lost a significant amount of blood. Her blood alcohol content at 4:25 a.m. was 0.244%. The victim underwent emergency surgery to repair the damage to her vagina, which had sustained two lacerations, one of which was five centimeters long.

The next day, October 4, the victim did not recall what had happened to her. She testified at trial that she remembered taking a sip of her second drink, next seeing that her legs and feet were red, then seeing bright lights and being told about the surgery, and waking up about 8:00 a.m. on October 4 as she was being wheeled into her hospital room. She told a friend on October 4 that her anus "hurt really bad." The victim testified that she had a flashback to the incident on November 11, 2015, when she awoke thinking that someone was in her bedroom. She saw herself being unable to breathe, her "face was pressed into something and [she] could feel an arm over [her] shoulder and a body holding [her] down." She remembered "physically feeling pain," as something was repeatedly stuck in her anus.

Forensic analysis of DNA samples taken from the outer and inner areas of the victim's anus showed the presence of sperm. Appellant could not be eliminated as a contributor of the sperm. Additionally, both the victim and appellant were identified as contributors to the DNA sample taken from blood found on the floorboard of appellant's truck.

Appellant told the detective who investigated the case that the victim had participated willingly in their sexual encounter. Appellant said that he had inserted one finger, then two fingers, into the victim's vagina. When she said that she wanted "more," he shoved his fist into her vagina and then "freaked out" when she started bleeding. Even though appellant was a volunteer fireman in a neighboring county, he offered the victim no assistance. Appellant contended at trial that the victim consented because she voluntarily left the bar with him and participated willingly in their sexual acts. Appellant asserted that the injury to the victim's vagina was merely an unfortunate accident.

The Commonwealth proposed jury instructions for forcible sodomy and aggravated sexual battery that combined alternative means for finding that the victim did not consent to the sexual encounter with appellant. The forcible sodomy instruction required the jury to find that

appellant penetrated the victim's anus against her will by force, or through her physical helplessness while knowing or having reason to know that she was physically helpless, or through her mental incapacity while knowing or having reason to know that she was mentally incapacitated.[3]  The instruction for aggravated sexual battery required the jury to find that appellant sexually abused the victim against her will by force causing serious bodily injury, or through her physical helplessness while knowing or having reason to know that she was physically helpless, or through her mental incapacity while knowing or having reason to know that she was mentally incapacitated.  Appellant argued that a single instruction could not logically contain conflicting means for accomplishing the offense and that the proposed instructions would confuse the jury.[4]  The trial court overruled appellant's objection, stating that the instructions were written in the disjunctive and the jury would be told it had to reach a unanimous verdict.

ANALYSIS

Whether to grant or deny a jury instruction is a matter of the trial court's discretion.  See Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009).  The court errs in giving an instruction that states the law incorrectly.  See Lawlor v. Commonwealth, 285 Va. 187, 228, 738 S.E.2d 847, 870 (2013).  This Court's "sole responsibility" when reviewing jury instructions on appeal "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises."  Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858

---

[3] The jury was given a separate instruction defining "physical helplessness," but was not given a definition of "mental incapacity."

[4] Appellant further argued in the trial court that the Commonwealth should be required to elect the theory under which it was prosecuting him.  He has not made that same argument on appeal, nor is it encompassed within his assignment of error.  See Rules 5A:12(c)(1)(i) and 5A:20.

- 4 -

(1982)).  Whether an instruction "accurately states the relevant law is a question of law" that we review *de novo*.  Sarafin v. Commonwealth, 288 Va. 320, 325, 764 S.E.2d 71, 74 (2014) (quoting Lawlor, 285 Va. at 228, 738 S.E.2d at 870).  The facts regarding a challenged instruction are viewed "in the light most favorable to the proponent of the instruction."  Cooper, 277 Va. at 381, 673 S.E.2d at 187.

The pertinent language in the instructions given in appellant's case required the jury to find that the acts were done "against [the victim's] will by force . . . or . . . through her physical helplessness . . . or through her mental incapacity . . . ."  Appellant argues that the trial court erred in giving the instructions because they were confusing and permitted a non-unanimous verdict regarding the means by which the victim's will was overcome.

This Court addressed a similar issue in Molina v. Commonwealth, 47 Va. App. 338, 624 S.E.2d 83 (2006).  The jury instruction at issue in Molina required the jury to find that the defendant had sexual intercourse with the victim "against her will and without her consent; and . . . [t]hat it was by force, threat or intimidation; or by the use of her mental incapacity or physical helplessness."  Id. at 351, 624 S.E.2d at 89.  The evidence in that case showed that the victim was voluntarily intoxicated and also had been hit on the head.  Id. at 344, 362, 624 S.E.2d at 86, 97.  The defendant argued that the instruction allowed the Commonwealth to prove that the act was non-consensual without proving force, threat or intimidation.  Id. at 355, 624 S.E.2d at 91.  We assumed without deciding that the trial court erred in giving an instruction that combined the alternative means of force and incapacity, id. at 356, 624 S.E.2d at 92, but found that the error was harmless and affirmed the conviction, id. at 359, 624 S.E.2d at 93.  The Court concluded that proof of the victim's physical or mental incapacity was sufficient by itself to

sustain a conviction under Code § 18.2-61(A)(ii)[5] and that independent proof that the sexual act was done without the victim's consent and against her will was not necessary. Id. at 358, 624 S.E.2d at 92-93. Because the jury was not required to make an express finding regarding the absence of consent, the fact that the given instruction required the jury to do so simply imposed "a heavier burden of proof" on the Commonwealth, making the assumed error harmless. Id. at 358-59, 624 S.E.2d at 93. The Supreme Court affirmed the conviction, but did not address the jury instruction issue on the merits because it held that the defendant had not preserved the issue at trial. See Molina, 272 Va. at 673, 636 S.E.2d at 474.

The question of whether the trial court erred in giving the Commonwealth's proffered instructions is squarely before us in this case, and we find that no error occurred. The question turns on whether the alternative means of force, physical helplessness, and mental incapacity are independent elements of a single offense or the means by which the offense was accomplished. "[N]ot every fact important to a determination of guilt constitutes an element of the offense. And as to any fact that is not an element, unanimity by jurors as to the proof of that fact is not required." United States v. Jockisch, 857 F.3d 1122, 1127 (11th Cir. 2017) (holding that the trial court did not err in rejecting defendant's proffered jury instruction because the jury was not required to agree unanimously as to which of several statutes prohibiting sexual activity with minors defendant would have violated if he had been successful in his efforts to engage in sexual activity with a person he believed was a fifteen-year-old girl so long as the jury unanimously agreed that the activities defendant proposed would have violated one of the statutes). "[I]f a particular fact is nothing more than a possible means by which a defendant met an element of the

---

[5] Code § 18.2-61(A)(ii) proscribes sexual intercourse "through the use of the complaining witness's mental incapacity or physical helplessness." Code § 18.2-61(A)(i) proscribes sexual intercourse "against the complaining witness's will, by force threat or intimidation of or against the complaining witness or another person."

offense, then no unanimity is required." Id.  See Schad v. Arizona, 501 U.S. 624, 631-32 (1991)

(plurality opinion) ("We have never suggested that in returning general verdicts . . . the jurors

should be required to agree upon a single means of commission, . . . [as] different jurors may be

persuaded by different pieces of evidence, even when they agree upon the bottom line."); State v.

Hummel, 393 P.3d 314, 317 (Utah 2017) (holding that where defendant was charged with the

single crime of "theft," the jury did not have to unanimously decide whether he committed the

offense by various means of deception or extortion).

In Schad, the defendant was convicted of first-degree murder and sentenced to death.  See

501 U.S. at 628.  He argued that the jury instructions were unconstitutional because they did not

require the jury to agree whether he was guilty of premeditated murder or felony murder based

on a robbery predicate.  See id. at 627-29.  Holding that the given instructions were

constitutional, the Supreme Court noted that "under Arizona law neither premeditation nor the

commission of a felony is formally an independent element of first-degree murder; they are

treated as mere means of satisfying a *mens rea* element of high culpability."  Id. at 639.  The

plurality opinion rejected as "erroneous" the "assumption that any statutory alternatives are *ipso*

*facto* independent elements defining independent crimes under state law, and therefore subject to

the axiomatic principle that the prosecution must prove independently every element of the

crime."  Id. at 636.

In contrast, in Richardson v. United States, 526 U.S. 813 (1999), the Supreme Court held

that in a prosecution charging defendant with engaging in a continuing criminal enterprise based

on three prior violations of federal drug statutes, the jury had to agree unanimously to the prior

violations because the statutory language requiring a "series of violations" made each violation

an element of the offense, rather than the means by which the offense was committed.  Id. at 815.

The Supreme Court distinguished the facts of that case from cases such as Schad in which a

"jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." Id. at 817. Further, the holding in Richardson is fact specific because the government presented evidence of the defendant's numerous prior convictions spanning seven years, and the Supreme Court expressed concern that the jury would conclude that the defendant was guilty based solely on the number of convictions without considering the details of each violation. See id. at 819.

A sexual offense "is, at core, an offense against the will and consent of the victim, irrespective of the manner and means by which the [sexual offense] is accomplished." Molina, 47 Va. App. at 357-58, 624 S.E.2d at 92. Because the victim's valid consent bars a conviction for a sexual offense, the dispositive element of both forcible sodomy and aggravated sexual battery is that the sexual acts occurred against the victim's will, whether by force or through her physical helplessness or mental incapacity. The means by which the victim's will was overcome is not an element of the offense that requires unanimity. Rather, force, physical helplessness, and mental incapacity present "several possible sets of underlying facts" that determine whether the victim's will was overcome. Jackson v. Commonwealth, 266 Va. 423, 434-35, 587 S.E.2d 532, 541 (2003) (holding that to impose the death penalty, a jury was required to find unanimously the aggravating factor of vileness, but was not required to find unanimously the conduct comprising vileness).[6]

Appellant's contention that the combined instructions could have resulted in a non-unanimous verdict is merely speculation and is not supported by the record. The alternative

---

[6] See Code 19.2-264.4(C) (stating that imposition of the death penalty under the vileness factor requires proof beyond a reasonable doubt that the defendant's "conduct in committing the [murder] was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind or aggravated battery to the victim").

means of force and incapacity were stated in the disjunctive in the instructions, and the jury was told it had to find that the evidence proved "each" of the given elements beyond a reasonable doubt. "[I]n order to proceed to conviction under one or the other theory of conviction, the jury had to make distinctive evidentiary findings and apply distinctive legal principles as instructed." Molina, 47 Va. App. at 357, 624 S.E.2d at 92. See also Bunch v. Commonwealth, 225 Va. 423, 442, 304 S.E.2d 271, 282 (1983) (holding that use of the word "or," rather than "and" in Code §§ 19.2-264.2 and 19.2-264.4 "demonstrates clearly that the term 'vileness' includes three separate and distinct factors" and that "proof of any one factor [is] sufficient to support a finding of vileness"). Juries are presumed to follow their instructions. See Riner v. Commonwealth, 268 Va. 296, 317, 601 S.E.2d 555, 567 (2004).

The evidence presented at trial sufficiently supported a finding that appellant committed both sodomy and aggravated sexual battery against the victim's will by the means of force, her physical helplessness, or her mental incapacity. Thus, "[t]he requirement of unanimity [was] satisfied . . . because, no matter which theory [the jury] accepted, all the jurors convicted under a theory supported by the evidence and all the jurors convicted the defendant of the same offense." Turner v. Commonwealth, 538 S.W.3d 305, 314 (Ky. App. 2017) (quoting Kingrey v. Commonwealth, 396 S.W.3d 824, 830 (Ky. 2013)).

The trial court polled the jury after it returned the verdicts, and each juror confirmed that he or she joined in the verdicts, thus establishing that the verdicts were unanimous. See Rule 3A:17(d); Hoke v. Commonwealth, 237 Va. 303, 315-16, 377 S.E.2d 595, 602-03 (1989) (finding that each juror's affirmance of the verdict when polled by the trial court showed that the jury's decision had been unanimous); see also Bethea v. Commonwealth, 68 Va. App. 487, 506, 809 S.E.2d 684, 693 (2018) (holding that defendant had "no right to a special poll to inquire how

or why each juror arrived at the [unanimous] verdict" (quoting <u>Shepperson v. Commonwealth</u>, 19 Va. App. 586, 592, 454 S.E.2d 5, 9 (1995))).

For these reasons, we hold that the trial court did not err in giving the jury instructions that the Commonwealth offered for forcible sodomy and aggravated sexual battery. We affirm appellant's convictions.

<u>Affirmed.</u>