**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6201

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

AKEEM LABEEB AL-MUWWAKKIL, a/k/a Willie Moore,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Robert G. Doumar, Senior District Judge. (4:01-cr-00092-RGD-1; 4:16-cv-00091-RGD)

Argued: September 9, 2020                    Decided: December 23, 2020
                      Amended: December 28, 2020

Before MOTZ, AGEE and KEENAN, Circuit Judges.

Reversed and remanded by published opinion. Judge Agee wrote the opinion, in which Judge Motz and Judge Keenan joined.

**ARGUED:** Yotam Barkai, BOIES SCHILLER FLEXNER LLP, New York, New York, for Appellant. Aidan Taft Grano, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Steven I. Froot, Peter M. Skinner, BOIES SCHILLER FLEXNER LLP, New York, New York, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Lisa R. McKeel, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

AGEE, Circuit Judge:

In 2001, Akeem Labeeb Al-Muwwakkil was convicted of one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). He was sentenced under the heightened penalties of the Armed Career Criminal Act ("ACCA") based on then-uncontested proof that he had at least three violent felony convictions. But in 2015, the Supreme Court's ruling in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*[1]), narrowed the offenses that qualify as violent felonies for ACCA purposes. This change led Al-Muwwakkil to file a 28 U.S.C. § 2255 motion contending that he had been improperly sentenced as an armed career criminal and sought resentencing without the ACCA's enhanced penalties. The district court denied the motion, holding that Al-Muwwakkil still had three violent felony convictions after *Johnson II* and thus had been sentenced properly. For the reasons set forth below, we reverse the district court's judgment and remand with instructions to grant Al-Muwwakkil's § 2255 motion and hold a new sentencing hearing.

I.

A.

Before turning to the salient facts, a brief discussion of the ACCA and *Johnson II* is warranted. The ACCA imposes heightened penalties for certain offenders. As relevant here, defendants who are convicted under 18 U.S.C. § 922(g) and who have three or more

---

[1] This case and *Johnson v. United States*, 559 U.S. 133, 138 (2010) ("*Johnson I*"), are frequently cited cases when analyzing the ACCA, and both involve a defendant named "Johnson." While various opinions designate them in different manners, this opinion refers to them by the chronological order in which they were decided.

convictions for a violent felony are subject to a term of imprisonment between fifteen years and life. *Compare* 18 U.S.C. § 924(e)(1) (ACCA's enhanced penalty), *with id.* § 924(a)(2) (stating the unenhanced penalty for § 922(g) offenses is a maximum term of 10 years' imprisonment). This designation can also increase defendants' offense levels for purposes of calculating their U.S. Sentencing Guidelines range. U.S.S.G. § 4B1.4.

As enacted by Congress, the ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Subsection (i) is known as the elements or force clause. Subsection (ii) contains several enumerated offenses; the last—"or otherwise"—clause is usually termed the residual clause.

In *Johnson II*, the Supreme Court held that the ACCA's residual clause was void for vagueness and thus could not be a predicate conviction for establishing that someone had a violent felony conviction. 135 S. Ct. at 2555–60. Additionally, in *Welch v. United States*, 136 S. Ct. 1257(2016), the Supreme Court held that *Johnson II* was "retroactive in cases on collateral review." *Id.* at 1268.

B.

At his 2001 sentencing, Al-Muwwakkil did not object to his classification as an armed career criminal, and the district court did not specify which of Al-Muwwakkil's prior convictions it relied upon in finding that he had the requisite three violent felony

3

convictions to be sentenced under the ACCA. Al-Muwwakkil's presentence report identified six of his prior convictions as ACCA predicates: attempted rape; burglary; two convictions for maiming; abduction; and shooting into an unoccupied building. Because the court found that Al-Muwwakkil should be sentenced as an armed career criminal, it followed U.S.S.G. § 4B1.4 when calculating his Sentencing Guidelines range. His offense level of 33, when combined with his criminal history category of VI, yielded a Guidelines range of 235 to 295 months' imprisonment. Sealed J.A. 160, 164. The district court imposed a sentence of 280 months. We affirmed his conviction and denied a certificate of appealability from the district court's denial of his first § 2255 motion. *United States v. Al-Muwwakkil*, 48 F. App'x 897 (4th Cir. 2002) (per curiam) (direct appeal); *see also United States v. Al-Muwwakkil*, 103 F. App'x 509 (4th Cir. 2004) (per curiam) (§ 2255 motion).

In 2016, after the Supreme Court decided *Johnson II*, Al-Muwwakkil sought and obtained permission to file a successive 28 U.S.C. § 2255 motion challenging his ACCA-based sentence. Order, *In re: Akeem Al-Muwwakkil*, No. 16-9448 (4th Cir. June 27, 2016), ECF No. 9.

The district court denied the § 2255 motion after concluding that Al-Muwwakkil had three violent felony convictions and had been sentenced properly as an armed career criminal, irrespective of *Johnson II*'s holding. *See Al-Muwwakkil v. United States*, No. 4:16cv91, 2017 WL 745563 (E.D. Va. Feb. 24, 2017). Specifically, the district court held that the two Virginia maiming convictions satisfied the ACCA's force clause and his Virginia burglary conviction fell within the ACCA's enumerated offense of generic burglary. *Id.* at *4–10. As to the burglary conviction, the court observed that although

4

Virginia's burglary statute was broader than generic burglary because it encompassed more locations than generic burglary, under Fourth Circuit precedent, the statute was divisible by the location burgled and so it could apply the modified categorical approach and review *Shepard*[2]-approved documents to determine whether Al-Muwwakkil had "necessarily" been convicted of generic burglary. *Id.* at *8. In so holding, the district court rejected Al-Muwwakkil's contention "that, after *Mathis v. United States*, 136 S. Ct. 2243 (2016), Virginia burglary no longer constitute[d] a divisible offense." *Id.* at *8; *see id.* at *8–9. The court concluded that the indictment for Al-Muwwakkil's burglary conviction showed that he broke into a "dwelling house," which meant that his conviction was necessarily for the crime of generic burglary and so it qualified as a predicate felony under the ACCA's enumerated offense clause. *Id.* at *9–10. Having found that Al-Muwwakkil possessed the requisite three violent felony convictions to be sentenced as an armed career criminal, the district court declined to consider whether his other convictions could also serve as ACCA predicates. *Id.* at *10.

Al-Muwwakkil noted a timely appeal and asked the Court to grant a certificate of appealability. Before the Court could act on that request, we decided *Castendet-Lewis v. Sessions*, 855 F.3d 253 (4th Cir. 2017), which called into question the district court's rationale for concluding that the Virginia burglary conviction qualified as an ACCA violent felony. *See infra* pp. 18–20. Noting the changes in the law since Al-Muwwakkil's original sentencing, the Court granted a certificate of appealability on the following issue: "Whether

---

[2] *Shepard v. United States*, 544 U.S. 13 (2005).

Al-Muwwakkil has three prior violent felonies and is an armed career criminal in light of the decisions in [*Johnson II*] and *Castendet-Lewis*[.]" Order, *United States v. Al-Muwwakkil*, No. 18-6201 (4th Cir. Sept. 18, 2018), ECF No. 6.[3]

## II.

The Court reviews *de novo* both the district court's denial of Al-Muwwakkil's § 2255 motion, *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007), and the determination that a defendant's prior convictions qualify as a violent felony under the ACCA, *United States v. Winston*, 850 F.3d 677, 683 (4th Cir. 2017).

On appeal, Al-Muwwakkil does not challenge the district court's determination that his two convictions for maiming count as ACCA predicates. Therefore, the sole issue before us is whether he also has the requisite third violent felony conviction. Al-Muwwakkil asserts he does not, while the Government contends that three of his other convictions qualify: burglary, attempted rape, and use of a firearm during an abduction.[4] We address each in turn, but begin with a brief discussion of how courts determine if a particular statute satisfies the ACCA's definition of a violent felony.

---

[3] The appeal was initially set for oral argument in October 2019, but we placed the case in abeyance pending the Supreme Court of Virginia's decision in *Davison v. Commonwealth*, Record No. 18-1694, which raised an issue of statutory interpretation relating to Virginia's criminal sexual assault statutes. Order, *Al-Muwwakkil*, No. 18-6201 (4th Cir. Oct. 15, 2019), ECF No. 46. Once the state court issued its decision in *Davison*, Al-Muwwakkil's appeal was removed from abeyance and oral argument was rescheduled.

[4] The Government has conceded that Al-Muwwakkil's convictions for abduction and shooting into an occupied dwelling are not ACCA predicates.

To determine if a conviction qualifies as a "violent felony," courts must "look only to the statutory definition—*i.e.*, the elements" of the offense of conviction rather than "the particular facts underlying" a defendant's conviction. *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In a "narrow range of cases" courts may use the "modified categorical approach" because "a statute with alternative elements" is deemed "'divisible'—i.e., comprises multiple, alternative versions of the crime." *Id.* at 261-62 (quoting *Taylor*, 495 U.S at 602). When a defendant is convicted of violating a divisible statute, courts can "look beyond the statutory elements 'to the charging paper and jury instructions'" (*Shepard*-approved documents) to determine what offense the defendant was convicted of committing. *Id.* (quoting *Taylor*, 495 U.S. at 602).

In *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Supreme Court reiterated how to distinguish a statute that sets out different means of committing a single offense (to which the categorical approach applies) from one that sets out different elements of committing different offenses (to which the modified categorical approach applies). It stated: "'[e]lements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 2248 (quoting *Elements*, Black's Law Dictionary (10th ed. 2014)). "[W]hen a statute sets out a single (or 'indivisible') set of elements to define a single crime," the analysis "is straightforward." *Id.* Courts can compare the elements of the offense to the ACCA's definitions of a violent felony, and see if that definition is satisfied. *Id.* But when "[a] single statute . . . list[s] elements in the alternative, and thereby define[s] multiple crimes," the court uses the modified categorical

7

approach "to determine what crime, with what elements, a defendant was convicted of." *Id.* at 2249. Once that determination is made, courts can compare the defendant's convictions to ascertain if it is a violent felony that qualifies as an ACCA predicate. *Id.*

All this to say, when determining whether a statute is indivisible or divisible, courts "start with the text." *United States v. Allred*, 942 F.3d 641, 649 (4th Cir. 2019). Use of disjunctive language suggests the possibility that the statute is divisible, but it is not dispositive on that point. *Id.*; *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015) ("[M]ere use of the disjunctive 'or' in the definition of a crime does not automatically render it divisible." (citation omitted)). Instead, courts must determine whether the text "enumerates various factual means of committing a single element" of one offense or "lists multiple elements [and thus multiple offenses] disjunctively." *Mathis*, 136 S. Ct. at 2249. One clue can be that when "the behavior underlying one statutory phrase differs so significantly from the behavior underlying another," the statute is generally treated as articulating different crimes. *Allred*, 942 F.3d at 650 (citation and internal quotation marks omitted).

But the focal point of the analysis is what the jury must find (or a defendant must admit) to convict. *Mathis*, 136 S. Ct. at 2249. For that reason, courts frequently consult "how courts generally instruct juries with respect to [an] offense" because the jury must find elements of the offense "unanimously and beyond a reasonable doubt." *Allred*, 942 F.3d at 650 (citation and internal quotation marks omitted). By way of example, the Supreme Court has drawn on the hypothetical of "a statute requir[ing] use of a 'deadly weapon' as an element of a crime and further provid[ing] that the use of a 'knife, gun, bat,

8

or similar weapon' would all qualify." *Mathis*, 136 S. Ct. at 2249. That list "merely specifies diverse means of satisfying a single element of a single crime," and "a jury need not find (or a defendant admit) any particular item" used to commit the offense. *Id.* Because this hypothetical statute sets out means, not elements, the Supreme Court noted that it should be treated as indivisible and courts would use the categorical approach to determine whether the offense constitutes a violent felony. *Id.*

In addition, courts may look at "how the offense has historically been charged." *Allred*, 942 F.3d at 651. Because "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives," that typically "suggests those alternatives are elements rather than means." *Id.* (quoting *Descamps*, 570 U.S. at 272) (internal quotation marks omitted). But "when a charging document reiterates all the terms of the statute, that is an indication that each alternative is only a possible means of commission." *Id.* (citation, internal quotation marks, and alteration omitted).

In sum, from the text and these external sources, courts determine whether the statute is divisible or indivisible and what offense should be compared to the relevant ACCA definition of a violent felony. With this methodology firmly in mind, we turn to whether the three convictions at issue in this case (attempted rape, burglary, or use of a firearm during abduction) are violent felonies under the ACCA.

A.

The parties first dispute whether Al-Muwwakkil's 1971 conviction for attempted rape, in violation of Va. Code Ann. § 18.1-44, qualifies as an ACCA violent felony. In relevant part, that statute states:

9

If any person carnally know a female of sixteen years of age or more against her will, by force, or carnally know a female child under that age or a female inmate of any hospital for the insane, who has been adjudged a lunatic, or any female who is an inmate or pupil of an institution for deaf, dumb, blind, feeble-minded, or epileptic persons, he shall, in the discretion of the court or jury be punished with death, or confinement in the penitentiary for life, or for any term not less than five years. But [in the event the female child was aged fourteen to sixteen and consented, then] the punishment shall be confinement in the penitentiary for not less than one nor more than twenty years.

Va. Code Ann. § 18.1-44 (Cum. Supp. 1975).[5]

Al-Muwwakkil contends that his attempted rape conviction cannot serve as an ACCA predicate because the statute is indivisible, defining a single crime of rape, which can be committed in several ways: (1) against a child; (2) against an adult female "against her will, by force"; (3) against a female who is an inmate of a hospital for the insane; (4) against a female who has been adjudicated a lunatic; or (5) against a female who is an inmate or pupil of a delineated institution. Al-Muwwakkil argues that, because the statute is indivisible, the Court must use the categorical approach to determine if the least culpable conduct nonetheless requires the requisite force to satisfy the ACCA's force clause. And because no force is required to convict a defendant of four of the means of committing the offense, it does not fall within the force clause. Al-Muwwakkil maintains that this reading

---

[5] The Virginia General Assembly repealed Title 18.1 of the Code in 1981, and replaced this rape statute with § 18.2-61. At that time, the General Assembly modified and created multiple other criminal sexual assault statutes, divided according to the relationship between the assailant and victim, nature of the sexual act, and other distinguishing characteristics. The current criminal sexual assault statutes take this same approach. *See* Va. Code Ann. §§ 18.2-61 to -67.10.

10

of the statute is consistent with Virginia's understanding of similar criminal sexual assault offenses, as set out in the Supreme Court of Virginia's recent decision in *Davison*.

The Government asserts that section 18.1-44 describes different rape offenses, meaning the statute is divisible and the modified categorical approach applies. It asserts this understanding is supported by the disjunctive language as well as the different penalty range established for rape of a 14- to 16-year-old "with consent" than the range established for the other prohibited rape offenses. Moreover, the Government contends that Al-Muwwakkil bears the burden of proving on collateral attack that his offense was *not* for rape by force and he came forward with no *Shepard*-approved documents to satisfy that burden. In sum, the Government posits that because one of the statutory offenses—attempted forcible rape—satisfies the ACCA's force clause, Al-Muwwakkil's conviction can be used as an ACCA violent felony conviction.[6]

---

[6] The Government also argues Al-Muwwakkil has forfeited his right to challenge the Government's reliance on his attempted rape conviction because he did not specifically list it as a conviction that was not an ACCA violent felony in his original pro se § 2255 fillings. Al-Muwwakkil acknowledges that his original memorandum did not directly attack this conviction, but he observes that he clearly argued that his ACCA-based sentence was unlawfully imposed in light of *Johnson II*, and that ever since the Government invoked this conviction as a basis for supporting the sentence, he has challenged it.

We have reviewed the initial filings and conclude that Al-Muwwakkil's originally framed issue clearly presented the issue of whether, after *Johnson II*, his prior convictions continued to support this ACCA-based sentence. While Al-Muwwakkil's accompanying memorandum misidentified the number of convictions identified in his PSR as potential predicate felonies and thus omitted the attempted rape conviction, he was acting pro se and had plainly identified the legal issue being pursued. What's more, as soon as the Government pointed to the attempted rape conviction, Al-Muwwakkil challenged its use as an ACCA violent felony as well. All told, the Government and court had adequate notice and briefing to satisfy any concern of unfair surprise and other interests. *See In re Under Seal*, 749 F.3d 276, 285–87 (4th Cir. 2014) (discussing the concepts of forfeiture and (Continued)

11

We agree with Al-Muwwakkil and hold that § 18.1-44 prohibits the single offense of rape, which can be committed by several means satisfying the elements of the crime. Our analysis begins with the statutory language, then discusses what the Supreme Court of Virginia said about successor statutes to § 18.1-44 in *Davison*, and concludes with our discussion of why a § 18.1-44 conviction cannot serve as an ACCA violent felony.

Applying *Mathis* to Al-Muwwakkil's attempted rape conviction, we conclude that § 18.1-44 sets out various factual means of committing rape rather than different elements of multiple offenses. Specifically, the statute is best read to contain two elements: (1) carnal knowledge (a sexual act), and (2) unwillingness, as demonstrated by actual or constructive force. The statute's second element can be satisfied upon proof of any one of multiple acts.

This view is consistent with Virginia courts' long-standing description and instruction that rape is carnal knowledge with an "unwilling" person, while recognizing many different ways of proving how a person can be "unwilling." *Davis v. Commonwealth*, 45 S.E.2d 167, 172 (Va. 1947) ("The crime, however, really consists in the ravishment of a woman without her consent; and the question, therefore, always is, was the woman willing or unwilling? And if it appear that carnal intercourse was effected with her without her consent, the crime of rape is proved, although no positive resistance of the will be shown." (citation and internal quotation marks omitted)). The exact language varies, but Virginia cases reiterate that the second element of rape requires proof that "the alleged act was against the will of the prosecutrix and by force." *Id.* Moreover, Virginia law recognizes

waiver); *United States v. Lemaster*, 403 F.3d 216, 219 (4th Cir. 2005) (liberally construing allegations in a pro se § 2255 motion).

12

both actual and constructive force. *Id.* When the woman was under age sixteen or suffering from a delineated mental or physical impairment, the law deemed her to be incapable of consenting, and thus treated any carnal knowledge as having been committed through the use of constructive force regardless of factual circumstances such as her consent or a lack of physical force. *Herron v. Commonwealth*, 157 S.E.2d 195, 197 (Va. 1967) (affirming use of a jury instruction stating that upon evidence that the defendant "had sexual intercourse with" the female who was under age at the time, "you should find [him] guilty regardless of whether or not force was used by him in the accomplishment of such act and regardless of whether or not such act was done with or without her consent"); *Addington v. Commonwealth*, 170 S.E. 565, 566 (Va. 1933) ("To sustain a conviction of rape where the victim is under the age of sixteen years it is not necessary to establish that it was accomplished by actual force. It is rape to carnally know a female child under the age of sixteen whether it be with or without her consent and whether it be with or without actual force, because under that age she cannot legally consent and constructive force is present."); *Stump v. Commonwealth*, 119 S.E. 72, 73 (Va. 1923) (recognizing that under the age of consent, the victim "cannot legally consent to the act, and constructive force is present, even though she does in fact consent" (citation and internal quotation marks omitted)).

But in a case involving an adult woman not suffering from a listed impairment, Virginia law required the jury to find evidence that she had not consented and that the defendant used force "sufficient to overcome resistance." *Bradley v. Commonwealth*, 86 S.E.2d 828, 833 (Va. 1955) ("To sustain the charge there must be evidence of 'some array

13

or show of force in form sufficient to overcome resistance, but the woman is not required to resist to the utmost of her physical strength, if she reasonably believes resistance would be useless and result in serious bodily injury to her.' The amount of resistance required necessarily depends on the circumstances[.]" (citation omitted)).[7] Hence, sometimes factual proof of age or infirmity served as proof that the act occurred without the victim's consent and against her will. And sometimes the State had to introduce circumstances-specific proof that the act actually occurred without her consent and against her will. But these were different means of satisfying the same (second) element of a single offense (rape).

In addition, the Supreme Court of Virginia has recently interpreted two related criminal sexual assault statutes in a manner that confirms our reading of § 18.1-44. In *Davison v. Commonwealth*, 836 S.E.2d 390 (Va. 2019), the Supreme Court of Virginia considered whether the jury was properly instructed on the elements of Va. Code Ann. § 18.2-67.1 (forcible sodomy) and Va. Code Ann. § 18.2-67.2 (aggravated sexual battery). Like Al-Muwwakkil's statute of conviction, Virginia's forcible sodomy statute prohibits certain (1) sexual acts that were committed (2) against the victim's will. The second part of the statute requires proof that:

---

[7] The statutory language providing for a different punishment if the victim is between the ages of fourteen and sixteen and the evidence showed actual consent does not alter our view that the statute describes means of satisfying the second element. Virginia courts long recognized that this caveat "may be termed a qualified consent . . . and graduates the punishment accordingly, but [it] does not affect the classification or designation of the offense." *Stump*, 119 S.E. at 73 (citation omitted). In short, this caveat affects punishment only and does not alter the elements of the underlying offense, or how Virginia law treated those elements.

14

1. The complaining witness is less than 13 years of age; or

2. The act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person, or through the use of the complaining witness's mental incapacity or physical helplessness.

Va. Code Ann. § 18.2-67.1(A). Similarly, aggravated sexual battery occurs upon proof of (1) sexual abuse committed (2) against the victim's will. Specifically, the second part of the statute requires proof that

1. The complaining witness is less than 13 years of age, or

2. The act is accomplished through the use of the complaining witness's mental incapacity or physical helplessness, or

. . .

4. The act is accomplished against the will of the complaining witness by force, threat or intimidation, and

   a. The complaining witness is at least 13 but less than 15 years of age; or

   b. The accused causes serious bodily or mental injury to the complaining witness; or

   c. The accused uses or threatens to use a dangerous weapon.

Va. Code Ann. § 18.2-67.3(A) (Repl. Vol. 2006).

Over Davison's objection, the trial court instructed the jury that it must find that the prohibited "acts were done 'against [the victim's] will by force . . . or . . . through her physical helplessness . . . or through her mental incapacity[.]'" *Davison v. Commonwealth*, 819 S.E.2d 440, 443 (Va. Ct. App. 2018) (alterations in original). Davison argued that this instruction was "confusing and permitted a non-unanimous verdict regarding the means by which the victim's will was overcome." *Id.* The Supreme Court of Virginia adopted the

15

Court of Appeals of Virginia's analysis rejecting this argument. 836 S.E.2d at 391. That court had concluded that the statute set out alternative means by which the "dispositive element" that "the sexual acts occurred against the victim's will" could be proved. 819 S.E.2d at 445. Critically, it held that "[t]he means by which the victim's will was overcome is not an element of the offense that requires unanimity. Rather, force, physical helplessness, and mental incapacity present 'several possible sets of underlying facts' that determine whether the victim's will was overcome." *Id.* (citation omitted); *see also* 836 S.E.2d at 391 ("The jury must be unanimous in finding" that "those acts were committed without [the victim's] consent and against her will," but "juror unanimity is not required for deciding the means used in the commission of [that] element of [the] crime."). Consequently, "it [was] immaterial that some jurors may have thought her will was overcome by force while others may have ascribed it to knowing exploitation of her physical helplessness or incapacity," because the dispositive finding was that the acts occurred without consent and against her will. 836 S.E.2d at 391.

Although *Davison* involved different statutes of conviction than Al-Muwwakkil's, it addresses two of Virginia's modern, more segmented criminal sexual assault statutes, both of which have the same basic structure as § 18.1-44. Each statute prohibits particular acts and also requires evidence about the nature of that act proving that it occurred against the victim's will. Any number of factual variations can satisfy that second element of the crime, from proof of the victim's age or mental ability to proof that the act occurred by force or other prohibited means. *Davison* makes clear that the jury must be unanimous in finding the act plus the overarching element of unwillingness. But the jury need not be

16

unanimous on how the prosecution proved the overcoming of will and lack of consent of the victim. 836 S.E.2d at 391. In some cases, the prosecution will do so through proof that the defendant used actual force. In others, it will do so through proof that the victim was deemed legally incapable of consenting. But those are factual variations describing how a single element of the offense is satisfied. *Accord United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1132–37 (9th Cir. 2014) (holding that Oregon's sexual abuse statute was indivisible because the prosecution had to prove "only that a defendant has engaged in intercourse with another and that the other 'does not consent thereto,'" but that the element of non-consent could be proven through multiple theories, including that the victim "did not actually consent or [that the] victim . . . lacked capacity to consent").

The rest of the analysis for ACCA purposes flows naturally from the determination that the statute describes "various factual ways of committing" the second element of the offense. *Mathis*, 136 S. Ct. at 2249. This means the statute is indivisible, and we analyze it using the categorical approach, reviewing "the most innocent conduct" that the law criminalizes to determine whether it satisfies the ACCA's definition of a violent felony. *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008). Here, the Government argued that attempted rape satisfies the ACCA's force clause, which requires "the use, attempted use, or threatened use of *physical force* against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added); *see United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017) ("[B]ecause the term 'physical force' contributes to the definition of a 'violent felony,' it is understood to mean '*violent* force—that is, force capable of causing physical pain or injury to another person'" (quoting *Johnson I*, 559 U.S. at 140)). But under § 18.1-

17

44's plain terms, the statute's second element can be satisfied with proof that does not involve the use of physical force in the ACCA's terms, such as by proof that the victim was underage or was a pupil of an institution for the blind. Accordingly, every conviction for § 18.1-44 does not necessarily involve a use of force sufficient to satisfy the ACCA's force clause. Al-Muwwakkil's attempted rape conviction thus does not qualify as a violent felony under the ACCA's force clause, and cannot be used to support his ACCA-based sentence.

B.

Next, the parties dispute whether Al-Muwwakkil's 1990 Virginia burglary conviction, in violation of Va. Code Ann. § 18.2-90, qualifies as an ACCA violent felony. The then-applicable version of the statute provided:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary[.]

Va. Code Ann. § 18.2-90 (Repl. Vol. 1988).[8]

As noted, the district court concluded that Al-Muwwakkil's conviction was for an offense that is generic burglary under the ACCA's enumerated offenses that constitute

---

[8] Va. Code Ann. § 18.2-90 has been amended three times since Al-Muwwakkil's offense, twice to modify what structures are included and once to add arson as the offense the defendant intended to commit. Acts 1992, c. 546; Acts 1997, c. 832; Acts 2004, c. 842. These changes do not affect this case.

18

violent felonies. But in *Castendet-Lewis*, the Court held that in view of *Mathis*'s clarification of when a statute articulates multiple means of satisfying one element of one offense versus setting out multiple elements of multiple offenses, Virginia's burglary statute is not divisible based on how the defendant "commit[ed] the requisite entry to sustain" the conviction. 855 F.3d at 262. We held that, instead, the statute identifies "four distinct factual means of describing how the statutory offense can be committed." *Id.* As such, the district court's reasoning, which relied on the divisibility of the statute based on the premises and means of entering, is no longer valid.

The Government acknowledges that *Castendet-Lewis* precludes the reasoning the district court used, but contends the Court can still conclude Al-Muwwakkil's burglary conviction qualifies as a violent felony under the ACCA's force clause. Specifically, it contends the statute is divisible according to the specific intent of the defendant: to commit murder, rape, or robbery. In its view these are not means of committing a single element of the burglary offense, but rather elements of three separate burglary offenses. As such, the Government contends the Court can use the modified categorical approach to determine that Al-Muwwakkil's conviction was for burglary with the specific intent to commit murder. And it asserts that this offense satisfies the ACCA's force clause, so Al-Muwwakkil's conviction qualifies as an ACCA violent felony.

Al-Muwwakkil responds that *Castendet-Lewis* controls and unequivocally held that Va. Code Ann. § 18.2-90 was indivisible. He further contends that the statute's text, Virginia case law, and Virginia's model jury instructions confirm that the statute articulates a single element of specific intent that can be proven in three ways. In his view, the statute

19

is indivisible, the categorical approach applies, and the offense can be committed without the use of force necessary to satisfy the ACCA's force clause. For these reasons, he asserts the Court cannot rely on this conviction to support his ACCA-based sentence.

In this case, we need not decide whether § 18.2-90 is divisible by specific intent because Al-Muwwakkil's conviction would not qualify as an ACCA violent felony even if we agreed with the Government that the offense was divisible and that the modified categorical approach applied.[9] As noted earlier, to qualify as a violent felony under the ACCA's force clause the offense must have "as an element the use, attempted use, or threatened use of physical force against the person of another." *United States v. Burns-Johnson*, 864 F.3d 313, 316 (4th Cir. 2017); *see also* 18 U.S.C. § 924(e)(2)(B)(i).

The "use of force" for ACCA purposes has both an actus reus and a mens rea component. The actus reus is violent physical force, "that is, force capable of causing physical pain and injury to another person." *Reid*, 861 F.3d at 527 (quoting *Johnson I*, 559

---

[9] Numerous circuit courts have elected a similar course where the divisibility analysis would not ultimately affect the courts' conclusion. *E.g.*, *Fletcher v. United States*, 858 F.3d 501, 507 n.6 (8th Cir. 2017) (concluding that it was not necessary to conduct a divisibility analysis because the statute categorically qualified as a violent felony under the ACCA's force clause); *United States v. Seabrooks*, 839 F.3d 1326, 1342 n.8 (11th Cir. 2016) (declining to determine if a robbery statute was divisible because the conviction qualified as a violent felony even if it was indivisible); *United States v. Hernandez-Perez*, 589 F. App'x 282, 283 n.1 (5th Cir. 2015) (deciding not to determine if a statute was divisible because "even assuming the modified categorical approach could be used to establish" what offense the defendant committed, it would not change the outcome because the narrower offense would not constitute a crime of violence); *see United States v. Guizar-Rodriguez*, 900 F.3d 1044, 1048 (9th Cir. 2018) (concluding that it did not have to determine whether a battery with a deadly weapon statute was divisible because it was categorically a crime of violence).

U.S. at 140). The mens rea component stems from the word "use," which the Supreme Court has said "naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).

Applied here, even assuming the modified categorical approach could be used to establish that Al-Muwwakkil was convicted of an offense involving his intent to commit murder, it does not follow that his conviction necessarily involved the use of force.[10] Virginia has long described statutory burglary as having two elements: (1) an unlawful act "combined with" (2) the requisite specific intent. *Hucks v. Commonwealth*, 531 S.E.2d 658, 661 (Va. Ct. App. 2000) (stating that statutory burglary is an "offense comprised of an act combined with a particular intent, [and] proof of such intent is as necessary as proof of the act itself and must be established as a matter of fact" (citation and internal quotation marks omitted)), *overruled on other grounds*, *Velasquez v. Commonwealth*, 661 S.E.2d 326, 330 (Va. 2008); *accord Taylor v. Commonwealth*, 150 S.E.2d 135, 140 (Va. 1966) ("Specific intent is an essential element of burglary."); Va. Model Jury Instr. No. 12.200 (delineating two elements).

The unlawful act element does not satisfy the force clause. Virginia cases have recognized that "breaking" for purposes of § 18.2-90 can be actual or constructive. Actual breaking occurs through "the application of some force, slight though it may be, whereby

---

[10] As the parties acknowledge, the indictment for Al-Muwwakkil's Virginia burglary conviction specifically alleges that he committed the offense "with the intent to commit murder," J.A. 91, so under the modified categorical approach we could rely on this *Shepard*-approved document to conclude that Al-Muwwakkil committed his offense with that specific intent.

21

the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime." *Lacey v. Commonwealth*, 675 S.E.2d 846, 850 (Va. Ct. App. 2009) (citation and internal quotation marks omitted). What's more, constructive breaking "can include fraud, threats, trickery, conspiracy, or some other nefarious conduct designed to prompt the victim to let the burglar in." *Lay v. Commonwealth*, 649 S.E.2d 714, 714 (Va. Ct. App. 2007). Thus, neither actual nor constructive breaking would involve the requisite "*violent* force—that is, force capable of causing physical pain and injury to another person" to satisfy the ACCA's force clause. *Reid*, 861 F.3d at 527 (quoting *Johnson I*, 559 U.S. at 140).

Similarly, the specific intent element does not satisfy the force clause. Although Virginia law requires the Government to prove the defendant's specific intent to commit a particular offense (here, murder), circumstantial evidence can satisfy that burden. *Maynard v. Commonwealth*, 399 S.E.2d 635, 644 (Va. Ct. App. 1990) (en banc). Moreover, "when an unlawful entry is made into a dwelling, the presumption is that the entry was made for an unlawful purpose." *Tompkins v. Commonwealth*, 184 S.E.2d 767, 768 (Va. 1971). "[T]he specific purpose, meaning specific intent, with which such an entry is made may be inferred from the surrounding facts and circumstances." *Id.* (footnote omitted) And "fact finder[s] may draw reasonable inferences from the evidence that the perpetrator intended to commit one felony rather than another." *Black v. Commonwealth*, 284 S.E.2d 608, 609 (Va. 1981). For instance, Virginia courts have held that a jury could have found the defendant had the specific intent to murder based on evidence that he "unlawfully entered [a residence] with a firearm." *Collins v. Commonwealth*, No. 1907-04-1, 2005 WL

22

2428356, at *2 (Va. Ct. App. Oct. 4, 2005) (unpublished). While the possession of a firearm during an unlawful breaking may be sufficient to satisfy this element of statutory burglary, that conduct does not necessarily involve the "use, attempted use, or threatened use of force." In this way, a conviction under Va. Code Ann. § 18.2-90 illustrates exactly what we recognized in *United States v. Dinkins*, 714 F. App'x 240 (4th Cir. 2017) (per curiam): "[A] person's intent to injure another grievously does not necessarily mean that the person has 'used' violent physical force." *Id.* at 243. Section 18.2-90's intent element focuses not on anything that the defendant did, attempted, or threatened, but rather on what he *purposed*.

The combined effect of the two elements does not satisfy the force clause either. Simply put, a conviction under § 18.2-90, even when committed with the intent to murder, does not require any factual finding that the defendant used, attempted to use, or threatened to use violent physical force. An individual could take the step of breaking and entering a residence with the intent to commit murder—conduct that violates § 18.2-90—without having used any force to effectuate either his presence in the residence or to manifest his purpose for being there. Although his purpose may have been to use violent physical force (i.e., murder) in the moments following, he need not have done so yet—or attempted or threatened to do so—to nonetheless convict him of the burglary offense.

In fact, the Government concedes that a conviction under § 18.2-90 based on an intent to commit murder does not require the *use* of force; instead, it contends that the conviction is the functional equivalent of an attempted murder under federal law and thus qualifies as a violent felony because it requires the attempted use of force. We reject this

23

view of § 18.2-90. Certainly, the surrounding factual circumstances that prove an intent to murder may consist of evidence that would also satisfy the force clause. But that is beside the point. In determining whether an offense has an element satisfying the force clause, we are called to look at "the *minimum* conduct needed to commit [the] offense." *United States v. Doctor*, 842 F.3d 306, 308–09 (4th Cir. 2016) (emphasis added). And the foregoing analysis of the two elements of this offense demonstrates that there's not necessarily an element of § 18.2-90 that would bring this conviction under the ACCA's force clause. *Cf. United States v. Taylor*, --- F.3d ---, 2020 WL 6053317, at *3 (4th Cir. 2020) (rejecting the argument that attempted Hobbs Act robbery constitutes the use of physical force under § 924(c)'s force clause because a defendant could "take[] a nonviolent substantial step toward threatening to use physical force—conduct that undoubtedly satisfie[d] the elements of attempted Hobbs Act robbery" without having "used, attempted to use, or threatened to use physical force. Rather, the defendant has merely *attempted to threaten* to use physical force"). At bottom, burglary committed with the intent to murder is a separate offense from attempted murder, and we do not accept the Government's invitation to conflate them.

For the reasons described, a conviction for Virginia burglary committed with the intent to murder does not necessarily involve the use of force. The unlawful act element does not require the use of force because it can be committed by acts as slight as opening an already-ajar door or using a key to enter the property. Similarly, undertaking that unlawful act with the specific intent to murder someone does not necessarily mean that the defendant in fact used, attempted to use, or threatened to use *any* force, let alone violent

24

physical force. Combining the two elements does not transform the statute into an offense that satisfies the ACCA's force clause. Thus, because § 18.2-90 does not have as an element conduct that would satisfy the force clause, Al-Muwwakkil's burglary conviction does not qualify as an ACCA predicate.

C.

Lastly, we address Al-Muwwakkil's Virginia conviction for use of a firearm during an abduction, which the PSR had not designated as an ACCA predicate felony conviction, but which the Government nonetheless urges us to rely on as a basis for affirming the district court. In the Government's view, the existence of this conviction makes any error in relying on the other predicates harmless, so it urges us to affirm the district court's judgment denying the § 2255 motion for resentencing. Circuit precedent forecloses the Government's position.

In *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018), we held that when the list of possible ACCA predicates has been narrowed at sentencing, the Government cannot "change its position regarding which convictions support [the] ACCA enhancement [during § 2255 proceedings once] one of its original choices . . . cannot do the job." *Id.* at 430. Hodge, like Al-Muwwakkil, filed a § 2255 motion arguing that his ACCA-enhanced sentence was unlawful following *Johnson II* because the convictions the district court had relied on no longer qualified as ACCA predicates. *Id.* at 423–27. We agreed. *Id.* at 427. The Government "attempt[ed] to revive Hodge's ACCA enhancement" by asserting that another of Hodge's convictions, which had not been identified as an ACCA predicate in the PSR, "could serve as a substitute predicate." *Id.* at 427–28. We disagreed, observing

25

that allowing "the Government to use such latent convictions for the first time [in a § 2255 motion] would unfairly deprive petitioners of an adequate opportunity to respond" at sentencing. *Id.* at 429 (internal quotation marks and second alteration omitted). For that reason, we reversed the district court's denial of Hodge's § 2255 motion and remanded for resentencing. *Id.* at 432.

*Hodge* governs here: the Government designated certain convictions in the PSR and thus gave Al-Muwwakkil notice that those convictions were the only ones relied on to support subjecting him to ACCA's enhanced sentencing scheme. As such, in this appeal, the Government cannot rely on an alternative conviction that it had not put forth at sentencing to support the denial of Al-Muwwakkil's § 2255 motion. Further, because Al-Muwwakkil has shown that of the six originally-designated ACCA predicates in his PSR, only two survive *Johnson II*, he has satisfied his burden under § 2255 of showing that he is entitled to resentencing. *See Hodge*, 902 F.3d at 426–27.

Although the above analysis is relatively straight-forward, we do not end there because Al-Muwwakkil asserts that *Hodge* entitles him to more than *de novo* resentencing. He urges us to remand with instructions that the district court sentence him *without* the ACCA enhancement and to prohibit the Government from relying on any of his convictions other than the ones originally designated at sentencing as ACCA predicates. This argument lacks support in *Hodge* and is foreclosed by our recent decision in *United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020), *petition for cert. filed sub nom.*, *Rumley v. United States*, No. 20-5733 (U.S. Sept. 15, 2020).

26

As we recognized in *Rumley*, nothing in *Hodge* prevents a district court, after the grant of a § 2255 motion for resentencing, to sentence a defendant as an armed career criminal based on prior convictions that had not been designated as ACCA predicates during the original sentencing.[11] In *Rumley*,

> [w]e conclude[d] that because *Hodge* is grounded on the defendant's lack of notice and opportunity to contest an ACCA predicate identified for the first time during a collateral proceeding, *Hodge* does not govern where . . . the defendant had both notice and a meaningful opportunity to challenge the designated predicate convictions prior to the resentencing hearing.

*Id.* at 545. We rejected the argument that the Government "should have only 'one full and fair opportunity to offer whatever support for [an] ACCA enhancement it could assemble'" "because restricting a resentencing in the fashion [the defendant] propose[d] would not only interfere with generally applicable sentencing procedures, but would also be unwarranted in light of the rapidly changing law governing ACCA predicates." *Id.* at 546. In sum, we held "that designating for consideration an additional ACCA predicate at resentencing does not give the government an unfair 'second bite' at the apple; it is, instead, consonant with the general principle that a sentence should be appropriately tailored to account for all information available to the sentencing court at the time a sentence is imposed." *Id.*

---

[11] In *Rumley*, the district court granted resentencing under § 2255 based on *Johnson II* rendering "two of the four prior convictions designated in [the defendant's] 2008 presentence report no longer qualif[ying] as ACCA predicates." 952 F.3d at 542. Before resentencing, a probation officer prepared a revised PSR that designated several convictions as ACCA predicates, "including a prior conviction that had not been so designated" in the defendant's original PSR. *Id.* After determining that the defendant had three predicate convictions, the district court sentenced him as an armed career criminal.

Both *Hodge* and *Rumley* require us to reject Al-Muwwakkil's argument that we narrow the conditions of his resentencing. During resentencing, the revised PSR and Government's arguments would provide the requisite notice to Al-Muwwakkil of which convictions are being used to support the ACCA sentencing enhancements, and he would have the opportunity to be heard about why the district court should not rely on those as ACCA predicates. As in any sentencing, the Government would bear the burden of proving that the conviction satisfied ACCA's definition of a violent felony. *See Rumley*, 952 F.3d at 546. And only if it found that Al-Muwwakkil possessed the requisite three violent felony convictions would the district court sentence him as an armed career criminal.

## III.

For the reasons set out above, we reverse the district court's judgment denying Al-Muwwakkil's § 2255 motion and remand with instructions for the court to grant the motion and resentence him. We take no position on the substantive question of whether Al-Muwwakkil's conviction for use of a firearm during an abduction qualifies as an ACCA violent felony. In advance of that resentencing hearing, the Government may follow the course set out in *Rumley* to state which of Al-Muwwakkil's convictions it contends could serve as the third ACCA predicate, and the district court can consider the parties' arguments in the first instance.

*REVERSED AND REMANDED*
*WITH INSTRUCTIONS*