# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 17-1861

UNITED STATES OF AMERICA

v.

MARC JAMES HARRIS,
Appellant

_____

ORDER SUR PETITION
FOR REHEARING EN BANC

_____

Present:  CHAGARES, Chief Judge, JORDAN, HARDIMAN, KRAUSE, RESTREPO, BIBAS, PORTER, MATEY, PHIPPS, MONTGOMERY-REEVES, CHUNG, AMBRO[*], FUENTES[*], Circuit Judges

The petition for rehearing en banc filed by appellee in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the judges of the circuit in regular service not having voted for rehearing, the petition for rehearing en banc by the Court, is denied. Judge Jordan, joined by Chagares, C.J., and Hardiman, Krause, Bibas, Porter, & Matey, JJ., files the attached concurrence.

BY THE COURT,

s/ L. Felipe Restrepo
Circuit Judge

Date: November 27, 2023
cc: All Counsel of Record

_____

[*] Judge Ambro and Judge Fuentes' votes are limited to panel rehearing.

Jordan, J., amended concurring in denial of rehearing en banc, joined by Chagares, C.J., and Hardiman, Krause, Bibas, Porter, & Matey, JJ.

We recognize that our decision today declining en banc reconsideration of this matter will be a source of great frustration for the government. Frustration is the gift that the "categorical approach" keeps on giving. This peculiar analytical construct has forced us and other courts to reach perverse outcomes in many, many cases, this one being only the latest.[1] And even when the result of applying the categorical approach sometimes makes sense, time and effort is often wasted because a more obvious route to the sensible result is readily available. Even worse is the difficulty of justifying the categorical approach and its outcomes to the citizenry we serve. The public may not care whether anyone finds the categorical approach frustrating, but they do care about justice, and we are unable to explain how our holding in this case satisfies basic notions of right and wrong. Despairing of that, we write to describe why the outcome here is compelled by precedent and to highlight why changes in the categorical approach are needed.

For those who may not be familiar with the categorical approach, we provide a brief overview of its origin and development, with particular focus on the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the legislation that, along with another firearms statute, 18 U.S.C. § 924(c), and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq., has been the primary seedbed for this extraordinary doctrine. We then explain how application of the categorical approach regularly generates unjust

---

[1] *See infra* Section III.

results and taxes judicial resources. We conclude by explaining our support for a more fact-based approach that would maintain key aspects of Supreme Court precedent while allowing courts to take account of an individual's actual conduct and, hence, provide real justice.[2]

First, however, we provide a summary of the facts in this case and a defense of our decision to decline en banc review.

## I. Background

### A. Harris's Convictions

Marc Harris has a long rap sheet. In 2010, he pled guilty in federal court to yet another crime: being a felon in unlawful possession of a firearm, a violation of 18 U.S.C. § 922(g). His earlier convictions in Pennsylvania state courts became relevant in that federal proceeding because he was sentenced to enhanced penalties under ACCA.[3] To be subject to such penalties, a defendant must have at least three prior convictions for crimes that qualify as violent felonies or serious drug offenses. A "violent felony" is defined in ACCA to include "any crime punishable by imprisonment for a term exceeding one year … that … has as an element the use, attempted use, or threatened use of physical force

---

[2] *See United States v. Taylor*, 142 S. Ct. 2015, 2033 (2022) (Thomas, J., dissenting) ("In light of the mischief that the categorical approach has caused, we should welcome briefing on whether a conduct-based approach tacks closer to statutory text and common sense … .").

[3] The maximum term of imprisonment for a violation of § 922(g) is ten years, 18 U.S.C. § 924(a)(2), but, with an ACCA enhancement, the punishment increases to a minimum term of fifteen years, *id.* at § 924(e)(1).

against the person of another[.]" 18 U.S.C. § 924(e)(2)(B)(i). That particular definition is contained in what has come to be called the "elements clause" or the "force clause" of ACCA.[4]

Among Harris's prior convictions is one for first-degree aggravated assault under § 2702(a)(1) of title 18 of Pennsylvania's consolidated statutes, and the District Court relied on that conviction when it sentenced him under ACCA on the federal gun-possession charge. During the hearing at which Harris pled guilty, the government described the facts behind his § 2702(a)(1) conviction. He had snatched a woman's purse, and, shortly thereafter, when the woman recognized him on the street and fled into her home, he shot a gun at the residence, narrowly missing a neighbor who had been with

---

[4] Section 924(e)(2)(B) also contains an enumerated-offenses clause, which specifically sets forth certain crimes that will qualify as violent felonies for purposes of ACCA, including, "burglary, arson, or extortion, [or crimes] involv[ing] use of explosives … ." *Id.* at § 924(e)(2)(B)(ii). And there is, or at least was, a so-called "residual clause," which Congress evidently meant to capture crimes committed with violence but which may not be subject to easy classification in advance as being violent. The residual clause provides that the term "violent felony" includes crimes "involv[ing] conduct that presents a serious potential risk of physical injury to another[.]" *Id.* Apropos our discussion today, the Supreme Court struck down that clause as being unconstitutionally vague, not because there is anything vague about it when considering an actual record of violent behavior but because, when forced to ignore the facts of a crime and to instead apply the categorical approach, where hypotheticals replace reality, the Court discovered that "[d]ecisions under the residual clause have proved to be anything but evenhanded, predictable, or consistent." *Johnson v. United States*, 576 U.S. 591, 606 (2015). Consequently, it held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.*

3

the woman and was following her inside.  (Revised Answering Br. at 6.)  When the District Court asked Harris if those facts were true, he said yes.  (*Id.*)

The Pennsylvania statute at issue specifies that "[a] person is guilty of aggravated assault if he …  attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"  18 Pa. Cons. Stat. § 2702(a)(1).  By its terms, the statute is aimed at punishing violent crimes.  If some additional indication of legislative intent were needed, the title "Aggravated assault" should suffice.[5]  The District Court decided that Harris's first-degree aggravated assault conviction was a qualifying ACCA predicate and, with that and his other offenses, he should receive an enhanced sentence.  Later, when Supreme Court precedent called into question the contours of ACCA,[6] Harris filed a motion under 28 U.S.C. § 2255,[7] which the District Court denied.  We reversed that denial, and the government's present petition for rehearing en banc (the "Petition") seeks to overturn our ruling.

---

[5] A violation of § 2702(a)(1) is "a felony of the first degree."  18 Pa. Cons. Stat. § 2702(b).

[6] *See Johnson*, 576 U.S. at 601-02, 606; *supra* note 4 and accompanying text.

[7] Section 2255(a) provides, in relevant part, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or … that the sentence was in excess of the maximum authorized by law, … may move the court which imposed the sentence to vacate, set aside or correct the sentence."

4

**B.      The Categorical Approach Applied to Harris**

If one not versed in the intricacies of the categorical approach read the foregoing and thought that shooting a gun at someone is obviously enough to support a conviction for aggravated assault under § 2702(a)(1), which, again, is the pertinent state statute, he'd be right.  Gunplay will indeed get you convicted of first-degree aggravated assault in Pennsylvania.  But if, in turn, the reader thought a conviction for that shooting would constitute a violent felony under ACCA, he would be dead wrong, even if the victim was literally dead.  Thanks to the categorical approach, that felony is not "violent" for ACCA purposes, because the categorical approach does not deal well with the obvious.  It attends only to theoretical possibilities, taking no account of the defendant's actual conduct and asking only what other conduct in some other case *might* be prosecuted under the statute of conviction.

Here's how it works: one examines the text of the statute under which the earlier conviction in question was obtained – in this case, § 2702(a)(1), the proposed ACCA predicate conviction – and then one hypothesizes the least culpable conduct with the least culpable *mens rea* that could qualify as a violation of that statute.  As a plurality of the Supreme Court recently put it, "[t]he focus is … on whether … a state offense necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'  If any – even the least culpable – of the acts criminalized do not entail that kind of force," then "the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (quoting 18 U.S.C. § 924(e)(2)(B)(i)).  Thus, "the

5

categorical approach requires courts not only to ignore the actual manner in which the defendant committed the prior offense, but also to presume that the defendant did so by engaging in no more than 'the minimum conduct criminalized by the state statute[,]'" *United States v. Ramos*, 892 F.3d 599, 606 (3d Cir. 2018) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)), and with the least culpable mindset, *Borden*, 141 S.Ct. at 1825. It is that set of presumptions that often leads to perverse results in categorical-approach cases.

So how did application of the categorical approach work out for Harris in this case? Really well. He ended up winning. *See United States v. Harris*, 68 F.4th 140, 141 (3d Cir. 2023) ("Harris' aggravated assault conviction is stricken as a predicate, and he no longer has the three violent felony convictions necessary to justify the enhancement."). And he won because, to his good fortune, we had already applied the categorical approach in a similar case, *United States v. Mayo*, 901 F.3d 218 (3d Cir. 2018), with a result that was ideal for him. The very same Pennsylvania statute and the very same ACCA question were presented in *Mayo* as in Harris's case, namely, whether a conviction under 18 Pa. Cons. Stat. § 2702(a)(1) constitutes a qualifying ACCA predicate offense for a defendant charged with violating 18 U.S.C. § 922(g). We said in *Mayo* that it did not, although it was undisputed that the defendant there was convicted of first-degree aggravated assault because he had "hit [the victim] on the head with a brick, punched and kicked [the victim] … , and hit [the victim] with a glass bottle[.]" *Mayo*, 901 F.3d at 222 (alterations in original). None of that real-world violence mattered. It never does with the categorical approach. What mattered in *Mayo*, and ultimately for

6

Harris, is that aggravated assault under Pennsylvania's § 2702(a)(1) does not provide a categorical match with ACCA's elements clause, which calls for the use of physical force against another. *Id.* at 224.

There is not a categorical match for two reasons. First, § 2702(a)(1) allows conviction for criminal acts committed not only intentionally and knowingly, but also "recklessly under circumstances manifesting extreme indifference to the value of human life," 18 Pa. Cons. Stat. § 2702(a)(1), and the Supreme Court has held that the definition of "violent felony" in ACCA's elements clause does not cover recklessly committed crimes. *See Borden*, 141 S. Ct. at 1825 ("We must decide whether the elements clause's definition of 'violent felony' … includes offenses criminalizing reckless conduct. We hold that it does not."). While some Courts of Appeals have held a mens rea of "extreme recklessness" is distinguishable and can be a categorical match, *e.g.*, *United States v. Manley*, 521 F.4th 143, 151 (4th Cir. 2022), we have not yet addressed that question.[8] And if it is not distinguishable, then when viewed through the lens of the categorical approach, ACCA cannot count a violation of § 2702(a)(1) as a violent felony. Being forced to assume, counterfactually, that Harris acted only recklessly, we would be required to let him evade the enhanced penalty ACCA was designed to impose.

The second reason there is no categorical match is more definitive: § 2702(a)(1) encompasses a wider range of possible actus rei than does ACCA. That is, Pennsylvania courts have upheld convictions under § 2702(a)(1) when the crime at issue involved no

---

[8] We leave that question for another day.

7

use of force at all. So, in that respect, too, the state statute is broader in application than ACCA's elements clause, which clearly does require "the use, attempted use, or threatened use of physical force against the person of another[,]" 18 U.S.C. § 924(e)(2)(B)(i). *Mayo*, 901 F.3d at 227-28. There is thus no categorical match. *See Commonwealth v. Thomas*, 867 A.2d 594, 597 (Pa. Super. Ct. 2005) (upholding conviction of a mother for starving her four-year-old son, and declaring that "evidence of the use of force or the threat of force is *not* an element of the crime of aggravated assault" (emphasis added)); *Commonwealth v. Taylor*, No. 1641 WDA 2013, 2015 WL 7576457, at *1, *6 (Pa. Super. Ct. Feb. 9, 2015) (affirming conviction under § 2702(a)(1) for defendant's "criminal neglect" of her twin six-year-old children, which included failing to feed and clothe them).

### C. The Pushback on *Mayo*

Attorneys for the United States Department of Justice have, quite understandably, been trying to get the result in *Mayo* overturned ever since. We knew at the time it was a "wholly unsatisfying and counterintuitive" outcome. *Mayo*, 901 F.3d at 230. But we believed then, and still do, that it is an outcome dictated by the categorical approach. For its part, however, "[t]he [g]overnment has consistently argued that *Mayo* was wrongly decided and should be overturned, in part because it improperly relied on a 'single intermediate appellate court' decision [– namely, the just-referenced opinion in *Commonwealth v. Thomas* –] in concluding that Pennsylvania first-degree aggravated assault can be committed without the use of physical force." *Harris*, 68 F.4th at 143 (quoting the government's brief).

To address that concern, we turned to the Supreme Court of Pennsylvania and asked it to accept certification of this question: "Whether the Pennsylvania First-Degree Aggravated Assault provision, codified at 18 Pa. Cons. Stat. § 2702(a)(1), requires some use of physical force, as the [United States] contends, or, instead, as the Pennsylvania Superior [Court] said in … *Commonwealth v. Thomas*, 867 A.2d … [at] 597 …, the statute means that 'the use of force or threat of force is not an element of the crime[.]'" *United States v. Harris*, 289 A.3d 1060, 1064 (Pa. 2023).

The court granted our petition for certification and confirmed that "there is no express element in Section 2702(a)(1) requiring the use or attempted use of physical force, or any reference to force at all." *Id.* at 1070. The court went on to observe that "the General Assembly was cognizant of how to codify the manner of causing a particular bodily injury as an element of the crime. The legislature did not restrict the manner of causing or attempting to cause serious bodily injury in subsection (a)(1) [of § 2702], and," the court added, "we decline the invitation to do so by judicial fiat." *Id.* at 1070-71 (citations omitted). Given the Pennsylvania Supreme Court's definitive statement that § 2702(a)(1) does not include the use of force as an element, and, in light of our own binding precedent in *Mayo*, we concluded that Harris was entitled to relief on his § 2255 motion.

Nevertheless, the government continues to argue that we should take this case en banc and overrule *Mayo*. By the government's lights, it does not really matter what the Pennsylvania Supreme Court has to say about Pennsylvania law. ACCA, it argues, is a federal statute and, therefore, "the question presented is whether each [of Harris's]

9

statutory offense[s] presents as an element … 'the use, attempted use, or threatened use of physical force against the person of another.'" (Petition at 2 (quoting 18 U.S.C. § 924(e)(2)(B)(i)).)

The government is of course correct that the definition of "physical force," as that term is used in ACCA, is a matter of federal law, not state law. But the government is wrong to imply that state law has nothing to do with whether a hypothetical state conviction – i.e., a conviction for the least culpable conduct with the least culpable mindset that could be prosecuted under the state statute in question – is relevant to the "physical force" question under ACCA. State law has everything to do with it. It is what the categorical approach was designed to take account of, however poorly it does so.

Here, as already discussed, the outcome of that analytical process is plain. Pennsylvania's aggravated assault statute, per the authoritative opinion of the Pennsylvania Supreme Court, does not include the use of force as an element. Period. That should be the end of it.

But the government presses on with its argument about the use of force, saying, "[a]n element that requires proof of bodily injury [, as does §2702(a)(1),] equates to 'physical force' as defined by federal law." (Petition at 3.) That must be so, the government says, because the Supreme Court in *Johnson v. United States*, 559 U.S. 133, 134 (2010), stated that "'physical force' means *violent* force – i.e., force capable of causing physical pain or injury to another person." (Petition at 3.) This same argument is pressed in a variety of ways in the government's Petition, but the import is always the same: "'serious bodily injury' … cannot result except through the application of 'physical

10

force' as stated in ACCA." (Petition at 3 n.1.) And therein lies the fundamental flaw in the government's argument: the quoted statement is false, as a matter of fact and logic.

As a matter of fact, it is wrong because serious bodily injury can and does result from inaction, or, in other words, from the absence of any force at all. That was the point of the Superior Court's analysis in *Commonwealth v. Thomas*. The mother in that case starved her four-year-old child to death, and there was no proof of restraint or force of any kind. *See Thomas*, 867 A.2d at 597 ("Mother argues that the evidence was not sufficient to sustain her conviction because the Commonwealth failed to demonstrate either the use of force or the threat of force."). Even under *Thomas*'s facts, though, some force had to be used against the child, says the government; the child must have been restrained in some way. Assuming that were true, it still does not answer the point. One can imagine an infant instead of a four-year-old being the victim, and no restraint would be required to effect the crime. Or one can imagine a bed-ridden invalid or an incapacitated elderly person, and again no force at all would be required. A heartless person with the duty to care for a victim could do nothing, exert no physical force at all on the victim, and simply watch the serious bodily harm occur as the victim starved or got gangrenous bedsores and died as a result. That would be a crime under the Pennsylvania aggravated assault statute, because it focuses on bodily injury, not the use of force. Even the government now acknowledges that "the state Supreme Court correctly confirmed: 'a person may commit first-degree aggravated assault by starving a person to death by willfully not performing an act required by law, as a parent or guardian.'" (Petition at 8 (quoting *Harris*, 289 A.3d at 1074).) So factually, serious

11

bodily injury can be caused by a failure to act – the complete absence of any force – rather than through the application of force.

Still, insists the government, "whether the state court believes that this omission to act by a parent involves 'physical force' is irrelevant, at least with regard to the application of ACCA." (Petition at 8-9.) To overcome the obvious contradiction of proclaiming that total inaction is the same as physical force, the government asserts that "[t]he U.S. Supreme Court has made clear that the reference to 'physical force' in the elements clause [of ACCA] simply distinguishes 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" (Petition at 9 (quoting *United States v. Castleman*, 572 U.S. 157, 170 (2014) and *Johnson*, 559 U.S. at 138).) Never mind that, earlier in the Petition, the government defined "physical force" as "violent force." Now, shifting gears, and trying to make the absence of force equate to the use of force, it simply declares that, "[w]ithout question, death by starvation involves 'physical force' under this binding definition." (Petition at 9.) But assertion is not reasoning, and saying something is so "without question" does not make it so.

The government's argument leaves logic behind. To say that bodily injury results from physical force does not demonstrate that bodily injury results *only* from physical force, as Harris's lawyers rightly note. Making their point stronger still, defense counsel assume the truth of the government's premise (which we reject as a matter of plain English) that one can rightly say a failure to act is an application of force, and they then proceed to show that the government still loses because calling something "force" does not make it ACCA-qualifying force. Here's the example they use to highlight the

12

government's error: "[S]uffice it to say that just as 'all pickpockets are criminals' does not validly imply that 'all criminals are pickpockets,' 'ACCA force is capable of causing physical pain or injury' does not validly imply 'all force causing pain or injury is ACCA force.'" (Petition Response at 9.)  All true, and the government has no answer for it.

So, we are left – unless the Supreme Court takes this matter up – with yet another absurd result dictated by the categorical approach.  A violent criminal who shot a gun at someone is saved from facing the ACCA penalties Congress designed for just such behavior because we are commanded to ignore readily provable, indeed admitted, conduct that should be accounted for.  How on Earth did we end up here?

## II.     How We Got Here

### A.     The Armed Career Criminal Act

When Congress passed ACCA as part of the Comprehensive Crime Control Act of 1984, it subjected violent recidivist offenders to more serious penalties than those received by other criminals.  To that end, it identified burglaries and robberies as "violent felonies," singling out those crimes because of their frequency and perceived harm to society.  *See* S. Rep. No. 98-190, at 5 (1983) ("[I]n terms of the likelihood of being victimized, burglary is the primary threat, followed by robbery."); H.R. Rep. No. 98-1073, at 3 (1984) ("Robberies and burglaries are the most damaging crimes to society.").  The legislation provided definitions for burglary and robbery,[9] with the dual aims of

---

[9] It defined burglary as "any offense involving entering or remaining surreptitiously within a building that is the property of another with intent to engage in conduct constituting a Federal or State offense."  S. Rep. No. 98-190, at 2 (1983).  It defined robbery as "any offense involving the taking of the property of another from the

13

respecting "the prerogatives of the States in defining their own offenses" while ensuring "that the same type of *conduct* is punishable on the Federal level in all cases." S. Rep. No. 98-190, at 20 (emphasis added). Congress wanted to avoid "put[ting] Federal courts in a position of having to interpret and apply State laws on robbery and burglary in Federal criminal trials." H.R. Rep. No. 98-1073, at 5-6. According to the legislative history, the intent was to avoid a situation in which "culpable offenders might escape punishment on a technicality" due to "the wide variation among states and localities in the ways that offenses are labeled[.]" S. Rep. No. 98-190, at 20.

Congress decided to expand the scope of ACCA in 1986.[10] It replaced burglary and robbery with three categories of offenses: (1) "violent felonies," which included burglary and robbery, as well as other enumerated offenses;[11] (2) "serious drug

---

person or presence of another by force or violence, or by threatening or placing another person in fear that any person will imminently be subjected to bodily injury[.]" *Id.*

[10] *See* 132 Cong. Rec. 7697 (1986) ("[T]he time has come to broaden that definition so that we may have a greater sweep and more effective use of this important statute.").

[11] As noted in part earlier, *supra* note 4 and accompanying text, the term "violent felony" is defined in ACCA as:

> [a] crime punishable by imprisonment for a term exceeding one year … involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that – (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]"

18 U.S.C. § 924(e)(2)(B).

trafficking offenses"; and (3) crimes that involved the use, attempted use, or threatened use of violence against a person.  Career Criminal Amendments Act of 1986, H.R. 4885, 99th Cong. (1986); H.R. Rep. No. 99-849, at 3 (1986).[12]

## B.     The Advent of the Categorical Approach

The categorical approach made its first appearance in Supreme Court case law in *Taylor v. United States*, 495 U.S. 575 (1990).  Like Harris in the case before us now, Arthur Taylor pled guilty to being a felon in unlawful possession of a firearm.  *Id.* at 578.  He had previously been convicted of robbery, assault, and two second-degree burglaries in Missouri.  *Id.* at 578 & n.1.  Applying ACCA, the district court adjudged Taylor to be a career offender and sentenced him to imprisonment for the mandatory minimum of fifteen years.  *Id.* at 579.  The Eighth Circuit affirmed, reasoning that "the word

---

[12] In addition to broadening ACCA's application, Congress deleted the statutory definitions of burglary and robbery.  Why it did so is a mystery.  The Supreme Court has observed, "[t]he legislative history as a whole suggests that the deletion of the 1984 definition of burglary may have been an inadvertent casualty of a complex drafting process."  *Taylor v. United States*, 495 U.S. 575, 590-91 (1990).

In 1989, then-Senator Joseph Biden introduced a bill that would have "reenact[ed]" those definitions, explaining that his bill "corrects an error that occurred inadvertently when the definition of burglary was deleted from the Armed Career Criminal statute in 1986."  *Id.* at 590 n.5 (quoting 135 Cong. Rec. 23519 (1989)).  The apparently uncontroversial bill passed in the Senate by a vote of 100 to 0 but was never taken up in the House of Representatives.  *See* A Bill to Implement the President's 1989 Drug Control Strategy, S. 1711, 101st Cong. (1989), https://www.congress.gov/bill/101st-congress/senate-bill/1711/all-actions-without-amendments.

'burglary' in § 924(e)(2)(B)(ii) 'means "burglary" however a state chooses to define it[.]'"[13] *Id.*

The Supreme Court, in contrast, thought it "implausible that Congress intended the meaning of 'burglary' ... to depend on the definition adopted by the State of conviction." *Id.* at 590. Were that the case, the Court reasoned, whether a defendant "receive[d] a sentence enhancement" would not depend on the defendant's conduct, but rather, on "whether the State of his prior conviction happened to call that conduct 'burglary.'" *Id.* at 590-91. That construction of ACCA would conflict with Congress's intent that "*the same type of conduct*" be "punishable on the Federal level in all cases." *Id.* at 582 (emphasis added) (quoting S. Rep. No. 98-190, at 20 (1983)).[14]

But, in spite of that entirely correct emphasis on offender conduct, the Supreme Court decision in *Taylor* then took a fateful turn. The conduct of the defendant was hard to determine based on the available record, so, instead of looking to his conduct to determine the applicability of ACCA's enhanced sentencing scheme, the Court compared the elements of the burglary statutes he violated with the elements of "generic burglary[,]" which the Court defined as "having the basic elements of unlawful or

---

[13] Section 924(e)(2)(B)(ii) is the enumerated-offense clause of ACCA and, as noted earlier, defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]" *See supra* note 10.

[14] *Cf. United States v. Booker*, 543 U.S. 220, 253 (2005) ("Congress' basic goal in passing the [new federal sentencing regime] was to move the sentencing system in the direction of increased uniformity.").

unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."[15] *Id.* at 599. Extrapolating from the case before it, with an indeterminate record on the offense conduct, the Court decided that, going forward, courts had to apply "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600.

The Court justified its new categorical approach with three reasons. First, looking at statutory text, the Court observed that § 924(e)(1) "refers to 'a person who …has three previous convictions' for – not a person who has committed – three previous violent felonies or drug offenses." *Id.* (quoting § 924(e)(1)). Then too, "[s]ection 924(e)(2)(B)(i) defines 'violent felony' as any crime punishable by imprisonment for more than a year that 'has as an element' – not any crime that, in a particular case, involves – the use or threat of force." *Id.* Thus, "[r]ead in this context," the Court decided, ACCA requires focus on "the elements of the statute of conviction, not … the facts of each defendant's conduct." *Id.* at 600-01.

Second, looking at legislative history, the Court said, "Congress generally took a categorical approach to predicate offenses[,]" and "no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case." *Id.* at 601. Surely Congress would have said something in the

---

[15] The Court noted that this definition was "practically identical to the [accidentally deleted] 1984 definition" and was therefore consistent with Congress's legislative intent. *Taylor*, 495 U.S. at 598; *see also id.* ("As we have seen, there simply is no plausible alternative that Congress could have had in mind.").

legislative history of ACCA if it "had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses[.]" *Id.*

Finally, the Court postulated that a conduct-based approach would burden federal courts in numerous ways. *Id.* at 601-02. Chief among these was that, as was the case in *Taylor*, a defendant's record of conviction might not clearly identify the defendant's criminal conduct for past convictions. *Id.* at 601. Absent a categorical approach, the Court was concerned that trial courts would get caught up in examining witnesses from past criminal proceedings to ascertain the facts underlying earlier convictions. *Id.* And if that were to happen and a judge were to make a ruling as to those facts, it could very well implicate the defendant's Sixth Amendment right to a jury trial. *Id.*

In addition to creating the categorical approach, the Court also briefly foreshadowed what we now call the "modified categorical approach." It observed that many states' "burglary statutes … define burglary more broadly" than the generic definition "by including places, such as automobiles and vending machines, other than buildings." *Id.* at 599. In cases in which such statutes are implicated, and "in a narrow range of cases where a jury was actually required to find all the elements of generic burglary[,]" then, "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, … the Government [would] be allowed to use the conviction for enhancement." *Id.* at 602.

So, while the Court's reasoning in *Taylor* began with an emphasis on Congress's desire that recidivists who have engaged in the same type of criminal conduct in their

18

pasts should be exposed to the same enhanced federal penalties, regardless of differences in the state statutes criminalizing such conduct, *id.* at 581-83, 587-89, the Court ended up in a very different place. It concluded that "the only plausible interpretation of … the enhancement statute … [is that] it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602.

## C.       The Modified Categorical Approach – Allowing a Peek at the Record

When the Supreme Court tried to apply the categorical approach in *Shepard v. United States*, 544 U.S. 13 (2005), it faced the problem it predicted in *Taylor*. As the Court had anticipated, the case presented a defendant who was convicted under a state statute that, although containing all the elements of generic burglary, contained additional elements that rendered it overbroad when compared with the generic version. The Massachusetts statute at issue provided that "[w]hoever, in the night time, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, ... shall be punished by imprisonment[.]" Mass. Gen. Laws Ann. ch. 266, § 16 (West 2000). The statute therefore covered burglary of boats and cars, as well as buildings. The problem was thus plainly presented: "[n]o one could know, just from looking at the statute, which version of the offense Shepard was convicted of. Accordingly, [the Court] again authorized sentencing courts to scrutinize a restricted set of materials ... to determine if the defendant had pleaded guilty to entering a building or, alternatively, a car or boat." *Descamps v. United States*, 570 U.S. 254, 262 (2013) (citing *Shepard*, 544 U.S. at 26).

The *Shepard* Court endorsed *Taylor*'s suggestion that trial courts could look to the record of conviction when the statute contained alternative elements, but it limited the

19

permissible record to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."[16] *Shepard*, 544 U.S. at 16.

Next, in *Descamps v. United States*, the Court instructed sentencing judges to apply this peek-at-the-record method, or "modified categorical approach[,]" only when dealing with a state statute that is "divisible." 570 U.S. at 257-58. The difficulty in *Descamps* was not that the California burglary statute at issue embodied more than one version of the crime; the problem was that it set out just one version but lacked an element of generic burglary. It did not include "an unlawful entry" requirement "along the lines of breaking and entering." *Id.* at 264. In other words, it was an indivisible statute that was not a categorical match for generic burglary, so it could not serve as a predicate conviction for an ACCA-enhanced sentence, no matter what the defendant's actual conduct had been. The Court declared "that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." *Id.* at 258.[17]

---

[16] In so ruling, the Court overturned the trial court's application of ACCA enhancement to the defendant because that court had relied on a police report in applying the modified categorical approach. *Shepard v. United States*, 544 U.S. 13, 18, 25-26 (2005).

[17] *See also Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense.").

The Court went on to explain that the modified categorical approach applies only when a statute presents alternative sets of elements, as opposed to alternative means of committing an element. *Id.* at 257, 271-74. To illustrate the distinction, the Court gave an example of a divisible statute that would be amenable to the modified categorical approach:

> [A]ssume … that a statute criminalizes assault with any of eight specified weapons; and suppose further … that only assault with a *gun* counts as an ACCA offense. A later sentencing court need only check the charging documents and instructions … to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he committed the ACCA-qualifying crime.

*Id.* at 272.[18] Thus, when considering convictions under divisible statutes, a court can turn to *Shepard* documents to determine which alternative statutory prohibition is implicated by the criminal conduct at issue in the case, and then the court must apply the categorical approach using the set of elements in that prohibition.[19] When considering convictions under indivisible statutes, however, conduct is irrelevant, even when it is known and would readily establish that the crime as committed meets the definition of "violent felony" under ACCA.

---

[18] Justice Kennedy appeared to be less than convinced by this hypothetical, saying, "the dichotomy between divisible and indivisible state criminal statutes is not all that clear." *Descamps v. United States*, 570 U.S. 254, 279 (2013) (Kennedy, J., concurring).

[19] This gloss on the categorical approach thus involves the added oddity of telling a judge to pay attention to the record but only briefly. After ascertaining what the defendant did to get convicted of a predicate offense, the judge is supposed to immediately forget all about that and contemplate only purely theoretical possibilities.

In dissent, Justice Alito expressed skepticism about the means-versus-elements dichotomy, and he questioned whether the statutes previously considered by the Court contained alternative elements as opposed to mere factual means. *Id.* at 283-87. The majority demurred, saying, "if, as the dissent claims, the state laws at issue in [previous] cases set out 'merely alternative means, not alternative elements' of an offense, that is news to us." *Id.* at 264 n.2 (citation omitted). The Court further observed that it could "see no real-world reason to worry" about the distinction. *Id.*

In *Mathis v. United States,* 579 U.S. 500 (2016), the Court sharpened the means-versus-elements distinction. The defendant in that case had five burglary convictions under Iowa law. *Id.* Iowa defined burglary to include entering an "occupied structure," Iowa Code §§ 713.1 (2013), which in turn was defined as "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value[,]" *id.* § 702.12. Although the statute strongly resembled the divisible statutes at issue in *Taylor* and *Shepard* – as well as the example hypothesized in *Descamps* – the Court held that the different structures listed in § 702.12 were means, not elements, and accordingly, that the statute was indivisible. *Mathis*, 579 U.S. at 506.

The Court explained that "'[e]lements' are the 'constituent parts' of a crime's legal definition – the things the 'prosecution must prove to sustain a conviction[,]'" *id.* at 504 (citing *Black's Law Dictionary* (10th ed. 2014)), and "what the jury must find beyond a reasonable doubt to convict the defendant," *id.* By contrast "facts" or "means" are "real-

22

world things – extraneous to the crime's legal requirements[.] … In particular, they need neither be found by a jury nor admitted by a defendant." *Id.*

*Mathis* also includes a vigorous defense of the categorical approach, with the Justices in the majority saying, "[o]ur decisions have given three basic reasons for adhering to an elements-only inquiry. First, ACCA's text favors that approach. … Second, a construction of ACCA allowing a sentencing judge to go any further would raise serious Sixth Amendment concerns. … And third, an elements-focus avoids unfairness to defendants. Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary." *Id.* at 510-12.

But the categorical approach, full or modified, has never garnered the Justices' unanimous approval. In *Mathis*, for example, Justice Kennedy's concurrence described the Court's decision as "a stark illustration of the arbitrary and inequitable results produced by applying an elements based approach" and observed that "[it] could not have been Congress' intent" either "for a career offender to escape his statutorily mandated punishment when the record makes it clear beyond any possible doubt that [he] committed generic burglary" or to create "vast sentencing disparities for defendants convicted of identical criminal conduct in different jurisdictions." *Id.* at 520-21 (Kennedy, J., concurring) (internal quotation marks omitted). And in his dissent, Justice Alito sympathized with the district and appellate courts tasked with ascertaining when to apply the categorical or modified categorical approach, and he wished us all "good luck."

*Id.* at 539 (Alito, J., dissenting).  Good luck wishes, however, have not been sufficient to stave off a multitude of unintended but truly damaging consequences.

## III.     Some Consequences of the Categorical Approach

The vitality of the judicial branch is rooted in public confidence that judges will apply the law justly, making every reasonable effort to carry out the will of the elected branches of government.  Our authority "depends in large measure on the public's willingness to respect … [our] decisions."  *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445-46 (2015).  And that, in turn, depends on our decisions making sense.  As currently administered, the categorical approach undermines public trust in our justice system precisely because it produces decisions that cannot be squared with common sense.  This is so not only when ACCA is involved but in other kinds of cases too, including those dealing with sentencing enhancements for other firearms offenses, 18 U.S.C. § 924(c), and the aggravated felony provision of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii).

### A.     The Armed Career Criminal Act

Time and again, federal courts have been required to hold that state law felony convictions for conduct that plainly involved the use of force – including convictions for voluntary manslaughter, aggravated assault, assault with a deadly weapon with intent to kill, attempted rape, first-degree sexual abuse, sexual abuse by forcible compulsion, taking indecent liberties with a child, maliciously damaging or destroying property by means of an explosive, first-degree robbery, second-degree robbery, first-degree burglary, and second-degree burglary – do not qualify as "violent felonies" under

24

ACCA.[20]   Today, we are likewise compelled to reiterate, bizarre though it sounds, that

shooting at a fleeing victim is not a "violent felony," *Harris*, 68 F.4th at 141, while in

---

[20] *See, e.g.*, *United States v. Jenkins*, 68 F.4th 148, 155 (3d Cir. 2023) (holding that second-degree aggravated assault of a police officer was not a violent felony under ACCA); *United States v. Mayo*, 901 F.3d 218, 222 (3d Cir. 2018) (holding that an aggravated assault during which the victim was hit in the head with a brick was not a violent felony under ACCA); *United States v. Al-Muwwakkil*, 983 F.3d 748, 760-61 (4th Cir. 2020) (holding that attempted rape and burglary under Virginia law did not constitute violent felonies under ACCA); *United States v. Vann*, 660 F.3d 771, 776 (4th Cir. 2011) (holding that a conviction for taking indecent liberties with a child under North Carolina law did not constitute a violent felony under ACCA); *Dunlap v. United States*, 784 F. App'x 379, 381 (6th Cir. 2019) (holding that voluntary manslaughter and aggravated assault were not violent felonies under ACCA, even though the district court recounted that the underlying offenses involved killing a person with a handgun and forcefully inserting a glass crack pipe into a victim's genitals); *Lofton v. United States*, 920 F.3d 572, 576 (8th Cir. 2019) (holding that a conviction for criminal sexual abuse did not constitute a violent felony under ACCA); *Brown v. United States*, 929 F.3d 554, 560 (8th Cir. 2019) (concluding that conviction for second-degree burglary did not count as a violent felony under ACCA); *United States v. Mathews*, 37 F.4th 622, 624, 626 (9th Cir. 2022) (holding that the crime of property damage under 18 U.S.C. § 844(i), which involved placing a "bomb packed with steel balls (to increase the risk of personal injury)" in an alley by the victim's house, was not categorically a violent felony under ACCA); *United States v. Walton*, 881 F.3d 768, 770 (9th Cir. 2018) (holding that neither first-degree robbery under Alabama law nor second-degree robbery under California law was a violent felony under ACCA); *United States v. Davis*, 875 F.3d 592, 600, 604 (11th Cir. 2017) (concluding that Alabama's first degree sexual abuse statute was not divisible, and that defendant's conviction for sexual abuse by forcible compulsion was not a violent felony under ACCA); *United States v. Parrott*, 585 F. Supp. 3d 661, 662-63 (E.D. Pa. 2022) (holding that second-degree robbery under Pennsylvania law did not categorically qualify as a predicate ACCA offense); *United States v. Singleton*, 252 F. Supp. 3d 423, 426-27, 433 (E.D. Pa. 2017) (holding that defendant's convictions under Pennsylvania's first-degree robbery statute for four prior robberies performed at gunpoint did not qualify as violent felonies under ACCA); *United States v. Brown*, 249 F. Supp. 3d 287, 295 (D.D.C. 2017) (holding that a conviction for assault with a deadly weapon with intent to kill under North Carolina law did not qualify as a violent offense under ACCA); *United States v. McNeal*, No. 13-cr-16, 2017 WL 5186385, at *3-5 (E.D. Pa. July 14, 2017) (holding that first-degree robbery under Pennsylvania law did not qualify as a violent felony under ACCA even though "there was little doubt the defendant's robberies were violent," as one of them involved shocking a victim with a taser and the other involved holding a victim at gunpoint); *United States v. Bayya*, No. 13-cr-00558, 2015 WL

25

*Mayo*, we were forced to say that bashing a victim in the head with a brick was not "violent" under ACCA. *Mayo*, 901 F.3d at 222, 230. Such outcomes are completely confounding, and the sense of injustice they ignite was foreseen.

As noted earlier, *supra* at Section I.B., a plurality of the Supreme Court in *Borden* held that a prior state law conviction for aggravated assault was not a "violent felony" under ACCA because the statute of conviction could be satisfied by a reckless use of force and thus was not a categorical match for the generic federal standard, which required intentional use of force. 141 S. Ct. at 1822, 1825. The dissent, meanwhile, objected that the Court's holding would reverberate across the nation, relieving defendants who had committed indisputably violent acts from ACCA's enhanced penalties. *Id.* at 1855-56 (Kavanaugh, J., dissenting). Those consequences, the dissent urged, would "override[] Congress's policy judgment about the risk posed by serial violent felons who unlawfully possess firearms." *Id.* at 1857. *Descamps* and *Mathis* only strengthened the categorical approach's grip on ACCA, despite other pointed dissents. *Mathis*, 579 U.S. at 536 (Alito, J., dissenting); *Descamps*, 570 U.S. at 281 (Alito, J., dissenting).

The dissenters' warnings have proved prescient. Take, for example, the Sixth Circuit's decision in *Dunlap v. United States*, 784 F. App'x 379 (6th Cir. 2019). The defendant there was convicted on two counts of being a felon in possession of a firearm

---

8751795, at *3 (D. Or. Dec. 14, 2015) (holding that a conviction under Oregon's first-degree burglary statute did not qualify as a violent offense under ACCA).

and ammunition, in violation of 18 U.S.C. § 922(g), after he "shot [his victim] in the head at close range, pistol-whipped him, and robbed him of his cellphone and $150 in cash." *Id.* at 381. The district court sentenced the defendant as a career offender under ACCA because it determined that his extensive criminal history – which included convictions for voluntary manslaughter for fatally shooting a man and aggravated assault for sexually assaulting a woman with a glass pipe – demonstrated "a disregard for the rights of others" and "a willingness to inflict whatever injury might flow … [without] the slightest remorse." *Id.* (internal quotation marks omitted). Applying the categorical approach, however, the Sixth Circuit had no choice but to conclude that neither his conviction for aggravated assault nor his conviction for voluntary manslaughter qualified as a "violent felony" under ACCA because the state statutes could, in some hypothetical case, reach less violent conduct. *Id.* at 387, 389.

Recall that Congress's purpose in passing ACCA was to "address the special danger created when … a violent criminal[] possesses a gun," *Borden*, 141 S. Ct. at 1830 (internal quotation marks omitted), and then juxtapose that purpose with the outcome just described. Consider further that the outcome is not some outlier but is a common consequence of the categorical approach.

**B.** **Using or Carrying a Firearm in Furtherance of a Crime of Violence, Under 18 U.S.C. § 924(c)**

Such consequences also regularly arise in firearms cases covered by 18 U.S.C. § 924(c), which, among other things, is meant to subject those who carry a gun "in furtherance of" a "crime of violence" to a mandatory minimum of five years in prison,

consecutive to other sentences.  18 U.S.C. §§ 924(c)(1)(A), (D)(ii); *see also* U.S. Sent'g Guidelines Manual § 2K2.1 (U.S. Sent'g Comm'n 2023).  As with ACCA, the Congressional intent behind § 924(c) has frequently been thwarted by the categorical approach, since the mandate to apply that approach obligates federal courts to determine if the predicate crime of conviction "has as an element the use, attempted use, or threatened use of physical force," as required by 18 U.S.C. § 924(c)(3)(A).  *See United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022).

When it was first suggested to our Court, in the context of an armed robbery case, that the categorical approach should apply when evaluating a § 924(c) charge, we rejected the notion, explaining that, "[w]hen the predicate offense, Hobbs Act robbery, and the § 924(c) offense are contemporaneous and tried to the same jury, the record of all necessary facts [is] before the district court."  *United States v. Robinson*, 844 F.3d 137, 141 (3d Cir. 2016), *abrogated on other grounds by United States v. Davis*, 139 S. Ct. 2319 (2019).  In other words, it made no sense to apply the categorical approach because the same jury was both hearing the facts pertaining to the predicate offense and deciding whether that offense "was committed with 'the use, attempted use, or threatened use of physical force[.]'"  *Id.*  There was no work for the categorical approach to do.  Or so we thought.

It turns out we were wrong.  In the course of declaring a portion of § 924(c) to be unconstitutionally vague in a later case, the Supreme Court said that it had "already read … nearly identical language" in another statute "to mandate a categorical approach."  *Davis*, 139 S. Ct. at 2327.  So, despite the reality that a single fact-finder is looking at all

28

of the information necessary to decide guilt or innocence on the charges for both the predicate offense and the firearm offense, the categorical approach now rules in § 924(c) cases too. We are pushed again into an alternative universe where egregious violence must be ignored, despite clear Congressional intent to the contrary.

The results are thus not surprising. They regularly fail to achieve justice but do compound the tragedy of the underlying crimes. In *United States v. Capers*, for instance, a § 924(c) conviction was predicated on the defendant's shooting and killing a man who was walking down a street with his eleven-month old daughter in his arms. 20 F.4th 105, 112, 116-17 (2d Cir. 2021). Although the Second Circuit acknowledged the crime was "violent, even murderous," the court had to vacate the defendant's sentence because the crime was charged as part of a conspiracy to violate the Racketeer-Influenced and Corrupt Organizations Act (RICO), and some RICO conspiracies – not this one, mind you, but some others – could theoretically encompass acts that do not involve the use of physical force. *Id.* at 118 (internal quotation marks and citations omitted). Many other defendants have similarly escaped the enhanced sentences that Congress said should apply under §924(c).[21]

---

[21] *See, e.g.*, *United States v. Eldridge*, 63 F.4th 962, 963 (2d Cir. 2023) (holding that second-degree kidnapping, in violation of New York state law, did not constitute a crime of violence under §924(c)); *United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019) (holding that a "violent, even murderous" Hobbs Act robbery conspiracy was not a "crime of violence"), *abrogated on other grounds by Lora v. United States*, 599 U.S. 453 (2023); *United States v. Davis*, 53 F.4th 168, 169-70, 173 (4th Cir. 2022) (holding that conviction under federal arson statute did not qualify as a crime of violence under § 924(c)); *United States v. Taylor*, 979 F.3d 203, 205, 210 (4th Cir. 2020) (holding that convictions for attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery did not qualify as crimes of violence under § 924(c), even though the underlying

## C. The Immigration and Nationality Act

In the immigration context, too, the categorical approach has produced disturbing results. Under the INA, an alien who commits an "aggravated felony" may be immediately deported and is ineligible for discretionary relief. *See Moncrieffe*, 569 U.S. at 187 (first citing 8 U.S.C. § 1227(a)(2)(A)(iii); and then citing *id.* §§ 1129b(a)(3), 1129b(b)(1)(C), 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i)). Enumerated offenses include, among others, "murder, rape, [and] sexual abuse of a minor." 8 U.S.C. §1101(a)(43)(A). The statute was meant to "identify categories of criminal conduct that evidence such a high degree of societal danger that an alien found to have engaged in such conduct should not be allowed to obtain permission to remain in this country." *Moncrieffe*, 569 U.S. at 218 (Alito, J., dissenting). Here again, however, the categorical approach has frustrated Congress's "clear objective." *Id.* at 218-19.

---

offense involved a fatal shooting); *United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019) (holding that kidnapping, in violation of 18 U.S.C. § 1201(a), did not qualify as a crime of violence under § 924(c)); *United States v. Fuertes*, 805 F.3d 485, 500 (4th Cir. 2015) (holding that sex trafficking by force, fraud, or coercion is not categorically a crime of violence under § 924(c)); *United States v. Brazier*, 933 F.3d 796, 800-01 (7th Cir. 2019) (holding that convictions for kidnapping and holding a victim for ransom did not constitute crimes of violence under § 924(c)); *United States v. Lung'aho*, 72 F.4th 845, 851 (8th Cir. 2023) (holding that arson, in violation of 18 U.S.C. § 844(f)(1), was not a crime of violence under § 924(c)); *United States v. Gill*, No. 07-cr-0149, 2023 WL 349844, at *12 (D. Md. Jan. 20, 2023) ("An indivisible offense that includes felony murder – like the Maryland first- and second-degree statutes at issue here – is not categorically a 'crime of violence' under § 924(c)[.]"); *Hernandez v. United States*, No. 16-CV-22657-HUCK, 2016 WL 8078310, at *3 (S.D. Fla. Dec. 7, 2016) (holding that hostage-taking, in violation of 18 U.S.C. § 1203, "does not categorically qualify as a 'crime of violence' under 18 U.S.C. § 924(c)'s elements clause").

In case after case, courts have confronted abhorrent conduct that qualifies as an enumerated offense under the text of the INA but ceases to qualify after application of the categorical approach. These include the case of the alien in *Larios-Reyes v. Lynch*, who sexually molested a four-year-old child but succeeded in having his order of removal vacated because the categorical approach required the court to "focus on the minimum conduct necessary for a violation of the state statute" and did not allow consideration of "whether Larios-Reyes's actual conduct constitute[d] 'sexual abuse of a minor[.]'" 843 F.3d 146, 152, 154-55, 159 (4th Cir. 2016) (internal quotation marks omitted).

We too recently found ourselves compelled to reach a result difficult to square with the language of the INA. In *Cabeda v. Attorney General*, although "it [was] indisputable … that [the petitioner] repeatedly had sex with a minor," we had to conclude under the "formalistic framework" of the categorical approach that, notwithstanding the reality of the conduct or the harm to the victim, the petitioner had not committed "sexual abuse of a minor" and therefore was not removable for an aggravated felony. 971 F.3d 165, 166-67, 174-76 (3d Cir. 2020).

Other Courts of Appeals have found themselves in similar predicaments. While Congress intended that aliens committing such heinous acts should not be permitted to remain here, the categorical approach has required us to reach the opposite result.[22]

---

[22] *See, e.g.*, *Quinteros v. Att'y Gen.*, 945 F.3d 772, 785-86 (3d Cir. 2019) (holding that conviction for conspiracy to commit assault with a dangerous weapon did not constitute an aggravated felony under the categorical approach); *Omargharib v. Holder*, 775 F.3d 192, 194 (4th Cir. 2014) (holding that a grand larceny conviction under Virginia law did not constitute an aggravated felony under the categorical approach); *Kerr v.*

## IV. Proposed Changes to the Categorical Approach

### A. The First Law of Holes

No one is suggesting that anything but laudable goals, such as uniformity and consistency,[23] underlie the categorial approach, and an elements-based analysis may be justified in some contexts.[24] But good intentions ought not blind us to practical consequences. The real-world problem with the categorical approach is not where it begins – which is in allowing judges to look beyond the labeling of a state offense – but rather where it ends – which is in prohibiting them from looking at the factual record.

It has been more than three decades since the Supreme Court decided in *Taylor* that the "only plausible interpretation" of ACCA is that it requires the categorical approach. *Taylor*, 495 U.S. at 602. With all respect, it is now time for the Court to give

---

*Holder*, 352 F. App'x 958, 963 (5th Cir. 2009) (holding that a conviction for false imprisonment under Florida law did not constitute an aggravated felony under the categorical approach); *Keeley v. Whitaker*, 910 F.3d 878, 881 (6th Cir. 2018) (holding that a conviction under Ohio's rape statute did not constitute an aggravated felony under the categorical approach); *United States v. Martinez*, 786 F.3d 1227, 1233 (9th Cir. 2015) (holding that conviction for third-degree child molestation under Washington law did not constitute an "aggravated felony" under the INA); *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1008 (9th Cir. 2008) (holding that petitioner's conviction for annoying or molesting a child under 18 years of age did not constitute a "crime involving moral turpitude" or an aggravated felony under the categorical approach); *Gomez-Ponce v. Holder*, 571 F. App'x 528, 530 (9th Cir. 2014) (vacating removal of an alien and holding that oral copulation with a minor was not "categorically a crime involving moral turpitude").

[23] *Taylor*, 495 U.S. at 582; *see also United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring) ("It surprises me that we have arrived at this point, because in theory, the categorical approach makes a good deal of sense .... But what was fine in theory has sometimes proven to be less so in practice.").

[24] *See, e.g., Blockburger v. United States*, 284 U.S. 299, 304 (1932) (applying an elements-based test to prohibit successive prosecutions for the same criminal act.).

that conclusion another long, hard look. The time-consuming casuistry compelled by the categorical approach dwarfs the concerns that were raised in *Taylor* and should call into question the defense of the approach outlined in *Mathis*. Will there be cases in which the record is unclear? Certainly. But those cases are the ones in which the categorical approach may be resorted to as needed, and we can trust district judges to recognize when that is so. Will a Sixth Amendment jury issue arise from time to time? Perhaps. And again, the categorical approach may prove useful then, as district judges will recognize. Such exceptions, however, do not justify the current rule.[25]

The chorus of voices over the years calling for a release from the analytical fetters of *Taylor* and its progeny could hardly be louder, reflecting a broad consensus that the categorical approach has gone terribly awry and that serious corrections are in order.[26]

---

[25] A good argument can be made for scrapping the categorical approach entirely and requiring sentencing courts to look at the true facts provable in each case when the crime of conviction is not obviously a "crime of violence" or "serious drug offense." If the requisite facts cannot be proven in those outlier cases, then the prosecution will have failed to carry its burden of showing that the prior conviction in question is a qualifying predicate offense for the sentencing enhancement it seeks. Judge Hardiman advocates this approach.

[26] *See, e.g.*, *Taylor*, 142 S. Ct. at 2032 (Thomas, J., dissenting) ("[C]ourts attempting to apply the categorical approach waste time thinking up improbable hypotheticals, making the approach very difficult to administer." (internal quotation marks omitted)); *Mathis v. United States*, 579 U.S. 500, 538 (2016) (Alito, J., dissenting) ("The Court's approach calls for sentencing judges to delve into pointless abstract questions."); *Chambers v. United States*, 555 U.S. 122, 133 (2009) (Alito, J., concurring) ("[T]he 'categorical approach' to predicate offenses has created numerous splits among the lower federal courts, the resolution of which could occupy this Court for years."); *De Lima v. Sessions*, 867 F.3d 260, 268 (1st Cir. 2017) ("Even a single such categorical analysis is an arduous task" that "is often difficult and time consuming."); *United States v. Scott*, 990 F.3d 94, 126 (2d Cir. 2021) (Park, J., concurring on behalf of five judges, and collecting cases demonstrating discontent) ("As a growing number of judges across

the country have explained, the categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice."); *United States v. Chapman*, 866 F.3d 129, 139 (3d Cir. 2017) (Jordan, J., concurring) ("Forcing judges to close their eyes [when applying the categorical approach] to what is obvious promotes inefficiency and guarantees difficult-to-explain sentences."); *Doctor*, 842 F.3d at 313 (Wilkinson, J., concurring, and collecting cases demonstrating counterintuitive results of the categorical approach) ("[The categorical approach] involves an exhaustive review of state law as courts search for a non-violent needle in a haystack or conjure up some hypothetical situation to demonstrate that the predicate state crime just might conceivably reach some presumably less culpable behavior outside the federal generic."); *Vann*, 660 F.3d at 787 (Agee, J., concurring) ("The dockets of ... all federal courts are now clogged with [ACCA] cases."); *United States v. Reyes-Contreras*, 910 F.3d 169, 186 (5th Cir. 2018), *abrogated in part by Borden v. United States*, 141 S. Ct. 1817 (2021) ("The well-intentioned experiment [the categorical approach] that launched fifteen years ago has crashed and burned."); *United States v. Burris*, 912 F.3d 386, 407 (6th Cir. 2019) (en banc) (Thapar, J., concurring, and collecting cases with similar sentiment) ("A casual reader … might struggle to understand why we are even debating if ramming a vehicle into a police officer is a crime of violence. The reader's struggle would be understandable. The time has come to dispose of the long-baffling categorical approach."); *Bridges v. United States*, 991 F.3d 793, 804 (7th Cir. 2021) ("[T]he categorical approach frequently produces counterintuitive results and has been the subject of much judicial handwringing."); *Brown*, 929 F.3d at 561  (Loken, J., dissenting) ("[T]his [outcome] 'demonstrates the absurdity of applying the categorical approach to the enumerated-offenses clause.'  Whether to abandon the categorical approach is of course an issue for the Supreme Court." (quoting *Quarles v. United States*, 139 S.Ct. 1872, 1880 (2019) (Thomas, J., concurring))); *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917 (9th Cir. 2011) (en banc), *abrogated by Young v. Holder*, 697 F.3d 976 (9th Cir. 2012), and *Descamps*, 570 U.S. 254 ("In the twenty years since *Taylor*, we have struggled to understand the contours of the Supreme Court's framework. Indeed, … perhaps no other area of the law has demanded more of our resources."); *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017) (O'Scannlain, C.J., specially concurring to "highlight how it illustrates the bizarre and arbitrary effects of the ever-spreading categorical approach"); *Davis*, 875 F.3d at 595  ("So [in this categorical approach case] we go down the rabbit hole again to a realm where we must close our eyes as judges to what we know as men and women.  It is a pretend place in which a crime that the defendant committed violently is transformed into a non-violent one … Curiouser and curiouser it has all become, as the holding we must enter in this case shows. Still we are required to follow the rabbit.").

That observation is not an expression of discontent with the work courts are expected to do.  It is instead a protest about one of the tools we are being required to use.  We have, for instance, come a very long way from the intent of Congress to apply ACCA with an eye toward the even-handed evaluation of offender conduct.  Indeed, we are in a world that is exactly the opposite of what Congress wanted, a world now where "two defendants who, in their past, independently committed identical criminal acts in two different states and have essentially the same criminal history will find that the applicability of ACCA to their current cases depends not on their past criminal conduct but on the phrasing of the different state criminal statutes." *United States v. Chapman*, 866 F.3d 129, 137 (3d Cir. 2017) (Jordan, J., concurring).

And it's not just courts complaining about these inequities, or at least recognizing that there is a major problem.  Lawyers on both sides of the "v." see it too.  Several years ago, Judge Wilkinson of the Fourth Circuit quoted defense counsel who described the categorical approach as "a morass of jurisprudential goo" and a "particularly glorious goo, because the confusion almost inevitably helps our clients." *United States v. Doctor*, 842 F.3d 306, 316 (4th Cir. 2016) (Wilkinson, J., concurring).  On the other side, an experienced Assistant United States Attorney in our own Circuit has called the categorical approach "a unique theory of statutory interpretation that warps the application of federal criminal provisions," and an "approach [that] subjects an offender to criminal penalties not based on what he did, but on whether someone else could violate the same statute he did but do it in a less violent way."  Robert A. Zauzmer, *Fixing the*

*Categorical Approach "Mess"*, 69 Dep't Just. J. Fed. L. & Prac. 3, 5, 10 (2021) (emphasis omitted).

No one is quite sure who first said it, but a wise proverb declares the "First Law of Holes" to be, "when you are in one, stop digging."[27]  We are in one, and it is not getting better with shouts of encouragement and more shovels.

---

[27] If you're inclined to believe Wikipedia, the origin of the adage is unknown but an early example was found "on page six of *The Washington Post* dated 25 October 1911, in the form: 'Nor would a wise man, seeing that he was in a hole, go to work and blindly dig it deeper[.]'" *Law of Holes*, Wikipedia, https://en.wikipedia.org/wiki/Law_of_holes#:~:text=The%20law%20of%20holes%20or,stop%20making%20the%20situation%20worse (last visited Oct. 13, 2023).  Another apt metaphor was provided by Justice Alito in his dissent in *Mathis*:

> Sabine Moreau lives in Solre–sur–Sambre, a town in Belgium located 38 miles south of Brussels. One day she set out in her car to pick up a friend at the Brussels train station, a trip that should have taken under an hour. She programmed her GPS and headed off. Although the GPS sent her south, not north, she apparently thought nothing of it. She dutifully stayed on the prescribed course. Nor was she deterred when she saw road signs in German for Cologne, Aachen, and Frankfurt. "I asked myself no questions," she later recounted. "I kept my foot down."
>
> Hours passed. After crossing through Germany, she entered Austria. Twice she stopped to refuel her car. She was involved in a minor traffic accident. When she tired, she pulled over and slept in her car. She crossed the Alps, drove through Slovenia, entered Croatia, and finally arrived in Zagreb—two days and 900 miles after leaving her home. Either she had not properly set her GPS or the device had malfunctioned. But Moreau apparently refused to entertain that thought until she arrived in the Croatian capital. Only then, she told reporters, did she realize that she had gone off course, and she called home, where the police were investigating her disappearance.
>
> Twenty-six years ago, in *Taylor v. United States*, 495 U.S. 575, 602 (1990), this Court set out on a journey like Moreau's. Our task in *Taylor*, like Moreau's short trip to the train station, might not seem very difficult—determining when a conviction for burglary counts as a prior conviction for burglary under the Armed Career Criminal Act … .  But things have not worked out that way.

*Mathis*, 579 U.S. at 536-37 (Alito, J., dissenting).

### B. A More Fact-Based Approach

There is a better way, and we are not the first to suggest it.[28]  It is simply this:

courts should be allowed to look at the record when it is readily available.  A return to the

facts, when the record allows it, would promote substantial justice.

The illogical results compelled by the categorical approach often derive from its

well-intentioned but ill-conceived under-inclusivity.  Again using ACCA sentencing as

an example, it will often be the case that the federal offense under consideration and the

state predicate offense match factually but that the state statute is broader elementally.

Permitting judges to rely on the facts underlying past convictions, when those facts are

readily ascertainable from *Shepard* documents, would allow application of the

enhancement based on reality and thus cure that under-inclusivity.  While the categorial

approach could be a "default inquiry," one that would apply in the absence of a factual

record, judges could use discretion to consider a defendant's conduct based on the

available record.  *Doctor*, 842 F.3d at 315, 319 (Wilkinson, J., concurring) (discussing

the discretion that district judges already have in deviating from the Sentencing

Guidelines and arguing that "the district court may decide in the face of an inconclusive

record to apply the categorical approach to predicate offenses, but it also should enjoy the

---

[28] *See, e.g., Descamps*, 570 U.S. at 288-89 (Alito, J., dissenting) ("[I]n *Shepard,* we observed that the factual circumstances of a defendant's prior conviction may be relevant to determining whether it qualifies as a violent felony under ACCA.  …  And in *Nijhawan,* we departed from the categorical approach altogether and instead applied a "circumstance-specific" approach.  *See* [*Nijhawan v. Holder,*] 557 U.S. [29,] 36, 38 [(2009)].  If anything, then, *Nijhawan* undermines the majority's position that rigid adherence to elements is always required.").

discretion and the tools to craft a more individualized sentence when such would serve the ends of justice").

In such a fact-supplemented approach, courts would begin by applying the categorical approach to determine if the state offense contains an unmatched element. If so, and the state statute is broader than the ACCA element, courts could "peek" at the actual conduct underlying the state conviction, as made evident (at the very least) by the *Shepard* documents, to determine whether the relevant conduct falls within the portion covered by the ACCA offense. If covered, the unmatched element would be disregarded in the categorical analysis and a sentence enhancement would be imposed if the remaining elements also matched and satisfied all elements of the ACCA-qualifying offense. If not, the inquiry would end and the underlying conviction would not qualify as a predicate offense for ACCA. This kind of analysis would ensure a defendant's conduct met the requirements of ACCA, notwithstanding the particular phrasing of any state statute. Used in this way, the categorical approach would provide direction but not dictate an unreasonable result.

This already occurs, to a degree, with the modified categorical approach. It allows courts to reference *Shepard* documents, so that, instead of sifting through state codes and state judicial precedent, a district court can be informed by readily ascertainable facts. It will, for instance, often be immediately apparent that a prior conviction for first-degree aggravated assault did involve violence (as in the case before us now). One can argue, as the dissent in *Shepard* did, that the universe of documents the Supreme Court has sanctioned for review is too narrow. *See Shepard*, 544 U.S. at 28 (O'Connor, J.,

38

dissenting) ("The Court today adopts a rule that is not compelled by statute or by this Court's precedent, that makes little sense as a practical matter, and that will substantially frustrate Congress' scheme for punishing repeat violent offenders who violate federal gun laws."). But just loosening the reins enough to permit resort to *Shepard* documents would be a major step forward.

To assist in appellate review, district courts employing this fact-supplemented approach could expressly note what record facts they are relying on and explain how those facts are clear enough to support their conclusion that defaulting to the categorical approach is not appropriate. An example of a record that is adequate to support the kind of analysis we are suggesting is the one before us right now. The reason for Harris's first-degree aggravated assault conviction is, based on the plea colloquy alone, abundantly clear, and the clarity of the record justifies using the approach we are advocating.

This kind of analysis can and should be done without regard to the means-versus-elements dichotomy that currently occupies so much time to so little purpose. If the facts of a crime are readily available through *Shepard* documents, why should it matter whether a statute is divisible along strictly elemental lines? That may be an interesting intellectual exercise, but it does not have any apparent connection to Congressional will or to the advancement of justice in any given case. Quite the contrary. As already outlined, the current analytical construct frustrates rather than fulfills Congressional intent and the just instinct that punishment should fit the crime.

Nor should Sixth Amendment concerns prevent a course correction. Judges are permitted to review *Shepard* documents when the modified categorical approach applies. Also, they must consider, *inter alia*, the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and the need to "protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C). Those considerations – and the *Shepard* documents – relate to the defendant's past, not his current crime of conviction. So, the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which had nothing to do with recidivism, does not apply.[29]

---

[29] Judge Matey joins this concurrence but notes two issues that, in his view, animate the many problems produced by the categorical approach. First, assuming statutes like 18 U.S.C. §§ 922(g) and 924(e) fall within Congress's power "[t]o regulate Commerce . . . among the several States," U.S. const. art. I, § 8, cl. 3, then fixing any problems posed should be a congressional, not judicial, challenge. *Lewis v. City of Chicago*, 560 U.S. 205, 217 (2010) ("[I]t is not our task to assess the consequences of each approach and adopt the one that produces the least mischief. Our charge is to give effect to the law Congress enacted."). But Judge Matey notes it is unclear whether Congress can craft a uniform definition of "violent felony" since "[u]nder our federal system, the 'States possess primary authority for defining and enforcing the criminal law.'" *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993)). In his view, shoehorning state standards for "violent felonies" into a single federal statute seems unlikely to succeed. *Cf.* Rachel E. Barkow, *Categorical Mistakes: The Flawed Framework of The Armed Career Criminal Act and Mandatory Minimum Sentencing*, 133 Harv. L. Rev. 200, 208, 237–38 (2019) ("It is remarkable that Congress would so cavalierly disrupt what has traditionally been a local matter and impose such a harsh punishment regime without pausing to think about or analyze how its new regime would have to adjust to fifty-one different jurisdictions and the ways they define crime.").

Second, Judge Matey remains concerned that attempts to fix the categorical approach may diverge from the historical tradition of the Sixth Amendment's requirement that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[] and proved beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), despite the Supreme Court's allowance for an exception for "the fact of a prior conviction," *id.*; *see Almendarez–Torres v. United States,* 523 U.S. 224 (1998); *Shepard v. United States*, 544 U.S. 13, 27

The *Mathis* majority suggested there would be "unfairness to defendants" because "[s]tatements of non-elemental fact in the records of prior convictions are prone to error precisely because their proof is unnecessary." *Mathis*, 579 U.S. at 512 (internal quotation marks and citation omitted). "At trial," the majority said, "and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he 'may have good reason not to' – or even be precluded from doing so by the court." *Id.* at 512 (quoting *Descamps*, 570 U.S. at 270). Respectfully, we think that reasoning wrongly calls into question much of our justice system. Guilty pleas are not mere theater. The facts are carefully put on record to ensure that they satisfy the elements of the crime and can support a conviction. A judge cannot accept a guilty plea without hearing and finding those facts. That process is critical to the administration of justice. It ensures that defendants willingly and knowingly admit to their actions and accept guilt for them. If we cannot accept those pleaded facts as given but should view them as suspect, we have bigger problems than the categorical approach. And what is true of guilty pleas should be even more true of verdicts after a full trial.

The system does not always work perfectly, but it is the very best we have for ascertaining truth. As such, we ought to rely on it and the outcomes it generates, as reflected in *Shepard* documents, to determine whether a defendant's prior convictions warrant an ACCA enhancement or similar consequences dictated by other statutes.

---

(2005) ("*Almendarez–Torres* has been eroded by . . . subsequent Sixth Amendment jurisprudence[.]") (Thomas, J., concurring in part & concurring in judgment).

41

## V. Conclusion

Considering the well-intentioned provenance of the categorical approach, it is ironic that it has come to be such an impediment to the sound administration of justice. Last year, Justice Thomas chose a different metaphor than hole digging, but his point seemed much the same when he memorably observed that the "'categorical approach' has led the Federal Judiciary on a 'journey Through the Looking Glass,' during which we have found many 'strange things.'" *Taylor*, 142 S. Ct. at 2026 (Thomas, J., dissenting) (quoting Lewis Carroll, *Alice in Wonderland and Through the Looking Glass* 227 (J. Messner ed. 1982)). We hope the journey, and the digging, ends soon.

In the meantime, we have no choice but to deny the government's petition for en banc review.